[930 NE2d 217, 904 NYS2d 296]

KIMBERLY HURRELL-HARRING et al., on Behalf of Themselves and All Others Similarly Situated, Appellants, v STATE OF NEW YORK et al., Respondents.

Argued March 23, 2010; decided May 6, 2010

## POINTS OF COUNSEL

*New York Civil Liberties Union Foundation,* New York City (*Corey Stoughton, Arthur Eisenberg, Christopher Dunn* and *Andrew Kalloch* of counsel), and *Schulte Roth & Zabel LLP* (*Gary Stein, Daniel Greenberg, Azmina Jasani* and *Kristie M. Blase* of counsel), for appellants. I. Plaintiffs have stated a claim for prospective relief from systemic violations of the constitutional right to counsel. (*Gideon v Wainwright,* 372 US 335; *Rothgery v Gillespie County,* 554 US 191; *Maine v Moulton,* 474 US 159; *People v Hilliard,* 73 NY2d 584; *People v Settles,* 46 NY2d 154; *People v Ross,* 67 NY2d 321; *People v Baldi,* 54 NY2d 137; *People v Cunningham,* 49 NY2d 203; *McMann v Richardson,* 397 US 759; *People v Witenski,* 15 NY2d 392.) II. The Appellate Division erred in holding that the right to counsel is enforced exclusively through individual postconviction actions seeking reversal of a conviction. (*Strickland v Washington,* 466 US 668; *Luckey v Harris,* 860 F2d 1012; *People v Donovan,* 13 NY2d 148; *N.Y. County Lawyers' Assn. v State of New York,* 192 Misc 2d 424; *Nicholson v Williams,* 203 F Supp 2d 153.) III. The Appellate Division erred in holding that plaintiffs' claims will interfere with their ongoing criminal cases such that this action must be dismissed. (*New York County Lawyers' Assn. v Pataki,* 188 Misc 2d 776; *Luckey v Harris,* 860 F2d 1012; *Matter of Oglesby v McKinney,* 7 NY3d 561; *Matter of Taylor v Sise,* 33 NY2d 357; *Matter of Veloz v Rothwax,* 65 NY2d 902; *Matter of Morgenthau v Erlbaum,* 59 NY2d 143; *Reed v Littleton,* 275 NY 150; *Strickland v Washington,* 466 US 668.) IV. Plaintiffs' claims are justiciable because they allege failure to comply with mandatory and legal constitutional standards. (*Klostermann v Cuomo,* 61 NY2d 525; *Board of Educ., Levittown Union Free School Dist. v Nyquist,* 57 NY2d 27; *Campaign for Fiscal Equity v State of New York,* 86 NY2d 307; *Campaign for Fiscal Equity v State of New York,* 100 NY2d 893; *Jiggetts v Grinker,* 75 NY2d 411; *McCain v Koch,* 70 NY2d 109; *Gideon v Wainwright,* 372 US 335; *Marbury v Madison,* 1 Cranch [5 US] 137; *King v Cuomo,* 81 NY2d 247; *New York State Bankers Assn. v Wetzler,* 81 NY2d 98.)

*Andrew M. Cuomo, Attorney General,* Albany (*Barbara D. Underwood, Andrea Oser, Denise A. Hartman* and *Victor Paladino* of counsel), for respondents. I. Plaintiffs fail to state a justiciable claim. (*Gideon v Wainwright,* 372 US 335; *People v Witenski,* 15 NY2d 392; *Maine v Moulton,* 474 US 159; *People v Claudio,* 59 NY2d 556; *Strickland v Washington,* 466 US 668; *People*

*v Baldi,* 54 NY2d 137; *People v Turner,* 5 NY3d 476; *People v Arthur,* 22 NY2d 325; *People v Settles,* 46 NY2d 154; *People v D'Alessandro,* 13 NY3d 216.) II. This action for declaratory and injunctive relief was properly dismissed because it would interfere with ongoing criminal proceedings and because adequate other remedies exist to address claims for the denial of the right to counsel. (*Matter of Rush v Mordue,* 68 NY2d 348; *Matter of State of New York v King,* 36 NY2d 59; *Matter of Lipari v Owens,* 70 NY2d 731; *Matter of Patel v Breslin,* 45 AD3d 1240; *Matter of Veloz v Rothwax,* 65 NY2d 902; *Matter of Morgenthau v Erlbaum,* 59 NY2d 143; *Matter of Oglesby v McKinney,* 7 NY3d 561; *Matter of Beneke v Town of Santa Clara,* 9 AD3d 820; *Island Swimming Sales v County of Nassau,* 88 AD2d 990; *O'Shea v Littleton,* 414 US 488.)

*Kathleen B. Hogan, District Attorney,* Albany (*Morrie I. Kleinbart* of counsel), for District Attorneys Association of the State of New York, amicus curiae. There is no basis to find any violation of a counsel-related right remediable in a civil action. Finding such a violation would do incalculable damage to the ability to effectively litigate such claims in criminal proceedings. (*Matter of Stream v Beisheim,* 34 AD2d 329; *Gideon v Wainwright,* 372 US 335; *Strickland v Washington,* 466 US 668; *People v Baldi,* 54 NY2d 137; *People v Turner,* 5 NY3d 476; *People v Caban,* 5 NY3d 143; *People v Benevento,* 91 NY2d 708; *People v Claudio,* 83 NY2d 76; *Kimmelman v Morrison,* 477 US 365; *People v Wiggins,* 89 NY2d 872.)

*Moskowitz, Book & Walsh, LLP,* New York City (*Susan J. Walsh* of counsel), *Norman L. Reimer,* Washington, D.C., *Ivan Dominguez, Michael Getnick,* Albany, *Green & Willstatter,* White Plains (*Richard Willstatter* of counsel), *Ann Lesk,* New York City, *Bruce Green, Ellen C. Yaroshefsky, Adele Bernhard,* White Plains, *Jenny Rivera,* Flushing, and *Steve Zeidman* for National Association of Criminal Defense Lawyers and others, amici curiae. I. The *Strickland* postconviction, remedial standard is the wrong standard in a class action claim seeking prospective relief to halt and prevent system-wide deficiencies in how the State of New York meets its constitutional obligation to provide indigent defendants effective assistance of counsel. (*Strickland v Washington,* 466 US 668; *Williams v Taylor,* 529 US 362; *Wright v West,* 505 US 277; *Kieser v People of State of N.Y.,* 56 F3d 16; *Rompilla v Beard,* 545 US 374; *Luckey v Harris,* 860 F2d 1012, *appeal after remand sub nom. Luckey v Miller,* 976 F2d 673; *United States v Cronic,* 466 US 648; *Geders v United States,* 425

US 80; *Holloway v Arkansas,* 435 US 475; *Kenny A. ex rel. Winn v Perdue,* 356 F Supp 2d 1353.) II. The Sixth Amendment right to effective assistance of counsel is broader than the right to assistance at trial and requires more than the mere appointment of counsel. (*Strickland v Washington,* 466 US 668; *Rothgery v Gillespie County,* 554 US 191; *Brewer v Williams,* 430 US 387; *Michigan v Jackson,* 475 US 625; *Higazy v Templeton,* 505 F3d 161; *Coleman v Alabama,* 399 US 1; *Kirby v Illinois,* 406 US 682; *United States v Gouveia,* 467 US 180; *Estelle v Smith,* 451 US 454; *Moore v Illinois,* 434 US 220.) III. The New York Constitution affords broader protection of the right to effective assistance of counsel and is cognizable prospectively. (*People v Elwell,* 50 NY2d 231; *People v Belton,* 55 NY2d 49; *People v P.J. Video,* 68 NY2d 296; *People v Torres,* 74 NY2d 224; *People v Dunn,* 77 NY2d 19; *People v Robinson,* 97 NY2d 341; *People ex rel. Ransom v Niagara County,* 78 NY 622; *People v Price,* 262 NY 410; *People v Settles,* 46 NY2d 154; *People v Benevento,* 91 NY2d 708.)

*Willkie Farr & Gallagher LLP,* New York City (*Lawrence O. Kamin, Maor A. Portnoy* and *Joseph M. Azam* of counsel), for the Fund for Modern Courts, amicus curiae. I. Under New York's political question doctrine, the instant case is justiciable. (*Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo,* 64 NY2d 233; *Matter of Dairylea Coop. v Walkley,* 38 NY2d 6; *Jones v Beame,* 45 NY2d 402; *Strickland v Washington,* 466 US 668; *New York County Lawyers' Assn. v State of New York,* 294 AD2d 69; *Jiggetts v Grinker,* 75 NY2d 411; *Matter of Anderson v Krupsak,* 40 NY2d 397; *Bruno v Codd,* 47 NY2d 582; *Board of Educ., Levittown Union Free School Dist. v Nyquist,* 57 NY2d 27; *Klostermann v Cuomo,* 61 NY2d 525.) II. The justiciability of alleged systemic deficiencies denying the constitutional right to counsel to indigent criminal defendants is further confirmed by other courts which have consistently held that this dispute is justiciable. III. Arguments that the amended complaint presents a nonjusticiable political question are flawed. (*Klostermann v Cuomo,* 61 NY2d 525; *Campaign for Fiscal Equity v State of New York,* 86 NY2d 307; *Campaign for Fiscal Equity v State of New York,* 100 NY2d 893; *Board of Educ., Levittown Union Free School Dist. v Nyquist,* 57 NY2d 27; *New York County Lawyers' Assn. v Pataki,* 188 Misc 2d 776; *Matter of Anderson v Krupsak,* 40 NY2d 397; *Marbury v Madison,* 1 Cranch [5 US] 137; *Bruno v Codd,* 47 NY2d 582.) IV. Adjudicating constitutional claims is not only within the Judiciary's purview, it is the highest calling

for the courts. (*Duke Power Co. v Carolina Environmental Study Group, Inc.*, 438 US 59; *Powell v McCormack*, 395 US 486; *People v LaValle*, 3 NY3d 88; *People v Scott*, 79 NY2d 474; *Klostermann v Cuomo*, 61 NY2d 525; *Board of Educ., Levittown Union Free School Dist. v Nyquist*, 57 NY2d 27; *Campaign for Fiscal Equity v State of New York*, 100 NY2d 893; *Powell v Alabama*, 287 US 45; *New York County Lawyers' Assn. v State of New York*, 294 AD2d 69.) V. The amended complaint presents significant issues that result in serious and immediate individual, familial and societal harms. (*Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233; *New York County Lawyers' Assn. v State of New York*, 196 Misc 2d 761; *Baba-Ali v State of New York*, 24 Misc 3d 576; *People v Claudio*, 83 NY2d 76; *United States v Cronic*, 466 US 648; *United States ex rel. Williams v Twomey*, 510 F2d 634; *Gideon v Wainwright*, 372 US 335; *Powell v Alabama*, 287 US 45; *N.Y. County Lawyers' Assn. v State of New York*, 192 Misc 2d 424; *McMann v Richardson*, 397 US 759.)

*Richards Kibbe & Orbe LLP*, New York City (*Lee S. Richards III*, *Arthur S. Greenspan* and *Eric S. Rosen* of counsel), and *Brennan Center for Justice at New York University School of Law* (*David S. Udell* and *Alicia L. Bannon* of counsel), for Michael A. Battle and others, amici curiae. I. The deficient system for defending the indigent alleged in the complaint undercuts the work of prosecutors and damages the integrity of the criminal justice system. (*People v Pelchat*, 62 NY2d 97; *Herring v New York*, 422 US 853; *Gideon v Wainwright*, 372 US 335; *People v DiSimone*, 23 Misc 3d 402; *People v Vilardi*, 76 NY2d 67; *Georgia v McCollum*, 505 US 42; *People v Settles*, 46 NY2d 154; *People v Santorelli*, 95 NY2d 412; *People v Taveras*, 10 NY3d 227.) II. Because courts have the power and responsibility to protect the integrity of the judicial system, this Court should find plaintiffs' claims justiciable. (*Campaign for Fiscal Equity v State of New York*, 100 NY2d 893; *New York County Lawyers' Assn. v State of New York*, 294 AD2d 69; *People v Ramos*, 99 NY2d 27; *Wehringer v Brannigan*, 232 AD2d 206, 89 NY2d 980; *Matter of Maron v Silver*, 58 AD3d 102; *N.Y. County Lawyers' Assn. v State of New York*, 192 Misc 2d 424; *Bruno v Codd*, 47 NY2d 582; *Matter of McCoy v Mayor of City of N.Y.*, 73 Misc 2d 508.) III. The State of New York's remaining objections to justiciability lack merit. (*People v Baldi*, 54 NY2d 137; *People v Stultz*, 2 NY3d 277; *Matter of Swinton v Safir*, 93 NY2d 758; *People v Donovan*, 13 NY2d 148; *People v Osorio*, 75 NY2d 80; *Castillo v Henry Schein, Inc.*, 259 AD2d 651; *Andon v 302-304*

*Mott St. Assoc.,* 94 NY2d 740; *Kimmel v State of New York,* 302 AD2d 908; *511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144; *People v Rivera,* 71 NY2d 705.)

*Davis Polk & Wardwell LLP,* New York City (*Daniel F. Kolb, Daniel J. O'Neill, Jennifer Marcovitz* and *Lara Samet* of counsel), and *Legal Aid Society* (*Steven Banks* and *Janet Sabel* of counsel), for Legal Aid Society, amicus curiae. I. The right to meaningful and effective assistance of counsel represents far more than avoidance of wrongful convictions. (*Argersinger v Hamlin,* 407 US 25; *Gideon v Wainwright,* 372 US 335; *People v Witenski,* 15 NY2d 392; *People v Hughes,* 15 NY2d 172; *Powell v Alabama,* 287 US 45; *United States v Cronic,* 466 US 648; *McMann v Richardson,* 397 US 759; *People v Droz,* 39 NY2d 457; *People v Baldi,* 54 NY2d 137; *Strickland v Washington,* 466 US 668.) II. A judicial remedy is necessary and appropriate where ineffective assistance of counsel is systemic. (*New York County Lawyers' Assn. v State of New York,* 294 AD2d 69; *New York County Lawyers' Assn. v State of New York,* 196 Misc 2d 761; *Matter of Swinton v Safir,* 93 NY2d 758; *Klostermann v Cuomo,* 61 NY2d 525; *Bruno v Codd,* 47 NY2d 582; *Indiana Protection & Advocacy Servs. Commn. v Commissioner, Ind. Dept. of Correction,* 642 F Supp 2d 872; *Oregon Advocacy Ctr. v Mink,* 322 F3d 1101; *Marbury v Madison,* 1 Cranch [5 US] 137; *Campaign for Fiscal Equity v State of New York,* 100 NY2d 893; *Board of Educ., Levittown Union Free School Dist. v Nyquist,* 57 NY2d 27.) III. Systemic deficiencies in a system of indigent defense constrain the ability of assigned counsel to satisfy their professional obligations to clients.

*Jonathan E. Gradess,* Albany, and *Alfred O'Connor* for New York State Defenders Association, amicus curiae. Ineffective assistance of counsel claims cannot be adequately resolved within the context of criminal case litigation in many counties in New York because overburdened and underfunded public defense lawyers do not file CPL article 440 motions, which are necessary for proper adjudication of these claims. (*Rothgery v Gillespie County,* 554 US 191; *Luckey v Harris,* 860 F2d 1012; *People v Linares,* 2 NY3d 507; *People v Brown,* 45 NY2d 852; *People v Rivera,* 71 NY2d 705; *People v Whitfield,* 44 AD3d 419; *People v Noll,* 24 AD3d 688.)

*David Loftis,* New York City, *Barry C. Scheck* and *Peter J. Neufeld* for Innocence Project, Inc., amicus curiae. New York's system for indigent defense does not guarantee that New York's

poor will receive the full scope of their right to effective assistance. Additionally, the remedy of *Strickland v Washington* (466 US 668 [1984]) is insufficient to remedy this systemic constitutional wrong. The current system for indigent defense in New York should be subject to systemic reform by the courts, both to ensure the constitutional rights of all criminal defendants and to minimize the risk that innocent defendants are convicted for crimes they did not commit. (*People v Settles,* 46 NY2d 154; *People v Claudio,* 59 NY2d 556; *People v Baldi,* 54 NY2d 137; *People v Caban,* 5 NY3d 143; *Youngblood v West Virginia,* 547 US 867; *Strickler v Greene,* 527 US 263; *People v Deskovic,* 201 AD2d 579, 83 NY2d 1003, 210 F3d 354, 531 US 1088; *People v Newton,* 150 AD2d 991, 74 NY2d 816; *Porter v Gramley,* 112 F3d 1308, *cert denied sub nom. Porter v Gilmore,* 523 US 1042.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to . . . have the Assistance of Counsel for his defence," and since *Gideon v Wainwright* (372 US 335 [1963]) it has been established that that entitlement may not be effectively denied by the State by reason of a defendant's inability to pay for a lawyer. *Gideon* is not now controversial either as an expression of what the Constitution requires or as an exercise in elemental fair play. Serious questions have, however, arisen in this and other jurisdictions as to whether *Gideon*'s mandate is being met in practice (*see e.g. Lavallee v Justices in Hampden Superior Ct.*, 442 Mass 228, 812 NE2d 895 [2004]).

In New York, the Legislature has left the performance of the State's obligation under *Gideon* to the counties, where it is discharged, for the most part, with county resources and according to local rules and practices (*see* County Law arts 18-A, 18-B). Plaintiffs in this action, defendants in various criminal prosecutions ongoing at the time of the action's commencement in Washington, Onondaga, Ontario, Schuyler and Suffolk counties, contend that this arrangement, involving what is in essence a costly, largely unfunded and politically unpopular mandate upon local government, has functioned to deprive them and other similarly situated indigent defendants in the aforementioned counties of constitutionally and statutorily guaranteed representational rights. They seek a declaration that their rights and those of the class they seek to represent

are being violated and an injunction to avert further abridgment of their right to counsel; they do not seek relief within the criminal cases out of which their claims arise.

This appeal results from dispositions of defendants' motion pursuant to CPLR 3211 to dismiss the action as nonjusticiable. Supreme Court denied the motion, but in the decision and order now before us (66 AD3d 84 [2009]) the sought relief was granted by the Appellate Division. That court held that there was no cognizable claim for ineffective assistance of counsel other than one seeking postconviction relief, and, relatedly, that violation of a criminal defendant's right to counsel could not be vindicated in a collateral civil proceeding, particularly where the object of the collateral action was to compel an additional allocation of public resources, which the court found to be a properly legislative prerogative. Two Justices dissented. They were of the view that violations of the right to counsel were actionable in contexts other than claims for postconviction relief, including a civil action such as that brought by plaintiffs. While recognizing that choices between competing social priorities are ordinarily for the Legislature, this did not, in the dissenters' judgment, excuse the Judiciary from its obligation to provide a remedy for violations of constitutional rights (*id.* at 95), especially when the alleged violations were ''so interwoven with, and necessarily implicate[d], the proper functioning of the court system itself'' (*id.* at 96).

Plaintiffs have appealed as of right from the Appellate Division's order pursuant to CPLR 5601 (a) and (b) (1). We now reinstate the action, albeit with some substantial qualifications upon its scope.

Defendants' claim that the action is not justiciable rests principally on two theories: first, that there is no cognizable claim for ineffective assistance of counsel apart from one seeking relief from a conviction, and second, that recognition of a claim for systemic relief of the sort plaintiffs seek will involve the courts in the performance of properly legislative functions, most notably determining how public resources are to be allocated.

The first of these theories is rooted in case law conditioning relief for constitutionally ineffective assistance upon findings that attorney performance, when viewed in its total, case specific aspect, has both fallen below the standard of objective reasonableness (*see Strickland v Washington*, 466 US 668, 687-688

[1984]), and resulted in prejudice, either with respect to the outcome of the proceeding (*id.* at 694) or, under this Court's somewhat less outcome oriented standard of "meaningful assistance," to the defendant's right to a fair trial (*People v Benevento,* 91 NY2d 708, 713-714 [1998]). Defendants reason that the prescribed, deferential (*see Strickland,* 466 US at 689; *Benevento,* 91 NY2d at 712) and highly context sensitive inquiry into the adequacy and particular effect of counsel's performance cannot occur until a prosecution has concluded in a conviction, and that, once there is a conviction, the appropriate avenues of relief are direct appeals and the various other established means of challenging a conviction, such as CPL article 440 motions and petitions for writs of habeas corpus or coram nobis. They urge, in essence, that the present plaintiffs can, based upon their ongoing prosecutions, possess no ripe claim of ineffective assistance and that any ineffective assistance claims that might eventually be brought by them would, given the nature of the claim, have to be individually asserted and determined; they argue that a finding of constitutionally deficient performance—one necessarily rooted in the particular circumstances of an individual case—cannot serve as a predicate for systemic relief. Indeed, they remind us that the Supreme Court in *Strickland* has noted pointedly that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system[,] . . . [but rather] to ensure that criminal defendants receive a fair trial" (466 US at 689).

These arguments possess a measure of merit. A fair reading of *Strickland* and our relevant state precedents supports defendants' contention that effective assistance is a judicial construct designed to do no more than protect an individual defendant's right to a fair adjudication; it is not a concept capable of expansive application to remediate systemic deficiencies. The cases in which the concept has been explicated are in this connection notable for their intentional omission of any broadly applicable defining performance standards. Indeed, *Strickland* is clear that articulation of any standard more specific than that of objective reasonableness is neither warranted by the Sixth Amendment nor compatible with its objectives:

> "More specific guidelines are not appropriate. The Sixth Amendment refers simply to 'counsel,' not specifying particular requirements of effective assis-

tance. It relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms . . .

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause" (466 US at 688-689 [citations omitted]).

We too have for similar reasons eschewed the articulation of more specific, generally applicable performance standards for judging the effectiveness of counsel in the context of determining whether constitutionally mandated representation has been provided (*see People v Benevento*, 91 NY2d at 712; *People v Baldi*, 54 NY2d 137, 146-147 [1981]). This is not to say that performance standards are not highly relevant in assuring that constitutionally effective assistance is provided and in judging whether in a particular case an attorney's performance has been deficient, only that such standards do not and cannot usefully define the Sixth Amendment-based concept of effective assistance. While the imposition of such standards may be highly salutary, it is not under *Strickland* appropriate as an exercise in Sixth Amendment jurisprudence.

Having said this, however, we would add the very important caveat that *Strickland*'s approach is expressly premised on the supposition that the fundamental underlying right to representation under *Gideon* has been enabled by the State in a manner that would justify the presumption that the standard of objective reasonableness will ordinarily be satisfied (*see Strick-*

*land*, 466 US at 687-689). The questions properly raised in this Sixth Amendment-grounded action, we think, go not to whether ineffectiveness has assumed systemic dimensions, but rather to whether the State has met its foundational obligation under *Gideon* to provide legal representation.

Inasmuch as general prescriptive relief is unavailable and indeed incompatible with the adjudication of claims alleging constitutionally ineffective assistance of counsel, it follows that plaintiffs' claims for prospective systemic relief cannot stand if their gravamen is only that attorneys appointed for them have not, so far, afforded them meaningful and effective representation. While it is defendants' position, and was evidently that of the Appellate Division majority, that the complaint contains only performance-based claims for ineffective assistance, our examination of the pleading leads us to a different conclusion.

According to the complaint, 10 of the 20 plaintiffs—two from Washington, two from Onondaga, two from Ontario and four from Schuyler County—were altogether without representation at the arraignments held in their underlying criminal proceedings. Eight of these unrepresented plaintiffs were jailed after bail had been set in amounts they could not afford. It is alleged that the experience of these plaintiffs is illustrative of what is a fairly common practice in the aforementioned counties of arraigning defendants without counsel and leaving them, particularly when accused of relatively low level offenses, unrepresented in subsequent proceedings where pleas are taken and other critically important legal transactions take place. One of these plaintiffs remained unrepresented for some five months and it is alleged that the absence of clear and uniform guidelines reasonably related to need has commonly resulted in denials of representation to indigent defendants based on the subjective judgments of individual jurists.

In addition to the foregoing allegations of outright nonrepresentation, the complaint contains allegations to the effect that although lawyers were eventually nominally appointed for plaintiffs, they were unavailable to their clients—that they conferred with them little, if at all, were often completely unresponsive to their urgent inquiries and requests from jail, sometimes for months on end, waived important rights without consulting them, and ultimately appeared to do little more on their behalf than act as conduits for plea offers, some of which purportedly were highly unfavorable. It is repeatedly alleged that counsel missed court appearances, and that when they did

appear they were not prepared to proceed, often because they were entirely new to the case, the matters having previously been handled by other similarly unprepared counsel.[1] There are also allegations that the counsel appointed for at least one of the plaintiffs was seriously conflicted and thus unqualified to undertake the representation.

The allegations of the complaint must at this stage of the litigation be deemed true and construed in plaintiffs' favor, affording them the benefit of every reasonable inference (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), the very limited object being to ascertain whether any cognizable claim for relief is made out (*id.*). If there is a discernible claim, that is where the inquiry must end; the difficulty of its proof is not the present concern. The above summarized allegations, in our view, state cognizable Sixth Amendment claims.

It is clear that a criminal defendant, regardless of wherewithal, is entitled to " 'the guiding hand of counsel at every step in the proceedings against him' " (*Gideon v Wainwright*, 372 US at 345, quoting *Powell v Alabama*, 287 US 45, 69 [1932]). The right attaches at arraignment (*see Rothgery v Gillespie County*, 554 US 191, 128 S Ct 2578 [2008]) and entails the presence of counsel at each subsequent "critical" stage of the proceedings (*Montejo v Louisiana*, 556 US —, 129 S Ct 2079 [2009]). As is here relevant, arraignment itself must under the circumstances alleged be deemed a critical stage since, even if guilty pleas were not then elicited from the presently named plaintiffs,[2] a circumstance which would undoubtedly require the "critical stage" label (*see Coleman v Alabama*, 399 US 1, 9 [1970]), it is clear from the complaint that plaintiffs' pretrial liberty interests were on that occasion regularly adjudicated (*see also* CPL 180.10 [6]) with most serious consequences, both direct and collateral, including the loss of employment and housing, and inability to support and care for particularly needy dependents. There is no question that "a bail hearing is a critical stage of the State's criminal process" (*Higazy v Templeton*, 505 F3d 161, 172 [2d Cir 2007] [internal quotation marks and citation omitted]).

Recognizing the crucial importance of arraignment and the extent to which a defendant's basic liberty and due process

---

1. This claim, referred to by plaintiffs as one based on "lack of consistent vertical representation," is raised by each of the four Suffolk County plaintiffs.

2. It is, however, alleged that in the counties at issue pleas are often elicited from unrepresented defendants at arraignment.

interests may then be affected, CPL 180.10 (3) expressly provides for the "right to the aid of counsel at the arraignment and at every subsequent stage of the action" and forbids a court from going forward with the proceeding without counsel for the defendant, unless the defendant has knowingly agreed to proceed in counsel's absence (CPL 180.10 [5]).[3] Contrary to defendants' suggestion and that of the dissent, nothing in the statute may be read to justify the conclusion that the presence of defense counsel at arraignment is ever dispensable, except at a defendant's informed option, when matters affecting the defendant's pretrial liberty or ability subsequently to defend against the charges are to be decided. Nor is there merit to defendants' suggestion that the Sixth Amendment right to counsel is not yet fully implicated (*see Rothgery*, 554 US at 209).

The cases cited by the dissent in which the allegedly consequential event at arraignment was the entry of a not guilty plea (*United States ex rel. Caccio v Fay*, 350 F2d 214, 215 [2d Cir 1965]; *United States ex rel. Combs v Denno*, 357 F2d 809, 812 [2d Cir 1966]; *United States ex rel. Hussey v Fay*, 220 F Supp 562 [SD NY 1963]; *Holland v Allard*, 2005 WL 2786909, 2005 US Dist LEXIS 46609 [ED NY 2005]) do not stand for the proposition that counsel, as a general matter, is optional at arraignment. Indeed, such a proposition would plainly be untenable since arraignments routinely, and in New York as a matter of statutory design, encompass matters affecting a defendant's liberty and ability to defend against the charges. The cited cases rather stand for the very limited proposition that where it happens that what occurs at arraignment does not affect a defendant's ultimate adjudication, a defendant is not on the ground of nonrepresentation entitled to a reversal of his or her conviction. Plaintiffs here do not seek that relief. Rather, they seek prospectively to assure the provision of what the Constitution undoubtedly guarantees—representation at all critical stages of the criminal proceedings. In New York, arraignment is, as a general matter, such a stage.

Also "critical" for Sixth Amendment purposes is the period between arraignment and trial when a case must be factually

---

3. It does not appear that any of the plaintiffs who were arraigned without counsel and jailed when they could not afford the bail consequently fixed agreed to proceed without a lawyer. The dissent's assertion (at 32 n 7) that plaintiffs were not "forced" to participate in bail hearings without counsel is, apart from being without any support in the record, irrelevant given the clear entitlement to counsel under the statute, and indeed the Constitution.

developed and researched, decisions respecting grand jury testimony made, plea negotiations conducted, and pretrial motions filed. Indeed, it is clear that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself" (*Maine v Moulton*, 474 US 159, 170 [1985]).

This complaint contains numerous plain allegations that in specific cases counsel simply was not provided at critical stages of the proceedings. The complaint additionally contains allegations sufficient to justify the inference that these deprivations may be illustrative of significantly more widespread practices; of particular note in this connection are the allegations that in numerous cases representational denials are premised on subjective and highly variable notions of indigency, raising possible due process and equal protection concerns. These allegations state a claim, not for ineffective assistance under *Strickland*, but for basic denial of the right to counsel under *Gideon*.

Similarly, while variously interpretable, the numerous allegations to the effect that counsel, although appointed, were uncommunicative, made virtually no efforts on their nominal clients' behalf during the very critical period subsequent to arraignment, and, indeed, waived important rights without authorization from their clients, may be reasonably understood to allege nonrepresentation rather than ineffective representation. Actual representation assumes a certain basic representational relationship. The allegations here, however, raise serious questions as to whether any such relationship may be really said to have existed between many of the plaintiffs and their putative attorneys and cumulatively may be understood to raise the distinct possibility that merely nominal attorney-client pairings occur in the subject counties with a fair degree of regularity, allegedly because of inadequate funding and staffing of indigent defense providers. It is very basic that

> "[i]f no actual 'Assistance' 'for' the accused's 'defence' is provided, then the constitutional guarantee has been violated. To hold otherwise 'could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment.' *Avery* v. *Alabama*, 308

U. S. 444, 446 (1940) (footnote omitted)" (*United States v Cronic*, 466 US 648, 654-655 [1984]).

While it may turn out after further factual development that what is really at issue is whether the representation afforded was effective—a subject not properly litigated in this civil action—at this juncture, construing the allegations before us as we must, in the light most favorable to plaintiffs, the complaint states a claim for constructive denial of the right to counsel by reason of insufficient compliance with the constitutional mandate of *Gideon*.[4] The dissent's conclusion that these allegations assert only performance based claims, and not claims for nonrepresentation, seems to us premature. The picture which emerges from a fair and procedurally appropriate reading of the complaint is that defendants are with some regularity going unrepresented at arraignment and subsequent critical stages. As noted, half the plaintiffs claim to have been without counsel at arraignment, and nearly all claim to have been left effectively without representation for lengthy periods subsequent to arraignment. If all that were involved was a "lumping together of 20 generic ineffective assistance of counsel claims" (dissenting op at 30) we would agree with the dissent that no cognizable claim had been stated, but we do not think that this detailed, multi-tiered complaint meticulously setting forth the factual bases of the individual claims and the manner in which they are linked to and illustrative of broad systemic deficiencies is susceptible of such characterization.

Collateral preconviction claims seeking prospective relief for absolute, core denials of the right to the assistance of counsel cannot be understood to be incompatible with *Strickland*. These are not the sort of contextually sensitive claims that are typically involved when ineffectiveness is alleged. The basic, unadorned question presented by such claims where, as here, the defendant-claimants are poor, is whether the State has met its obligation to provide counsel, not whether under all the circumstances counsel's performance was inadequate or prejudicial. Indeed, in cases of outright denial of the right to counsel prejudice is presumed. *Strickland* itself, of course, recognizes the critical distinction between a claim for ineffective assistance and one alleging simply that the right to the assistance of counsel has been denied and specifically acknowledges that the

---

4. We note that *Cronic* is careful to distinguish this distinct claim from one for ineffective assistance (*Cronic*, 466 US at 654 n 11).

latter kind of claim may be disposed of without inquiring as to prejudice:

"In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. See *United States* v. *Cronic,* [466 US] at 659, and n. 25. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. *Ante,* at 658. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent" (466 US at 692).

The allegations before us state claims falling precisely within this described category. It is true, as the dissent points out, that claims, even within this category, have been most frequently litigated postconviction, but it does not follow from this circumstance that they are not cognizable apart from the post-conviction context. Given the simplicity and autonomy of a claim for nonrepresentation, as opposed to one truly involving the adequacy of an attorney's performance, there is no reason—and certainly none is identified in the dissent—why such a claim cannot or should not be brought without the context of a completed prosecution.

Although defendants contend otherwise, we perceive no real danger that allowing these claims to proceed would impede the orderly progress of plaintiffs' underlying criminal actions. Those actions have, for the most part, been concluded,[5] and we have, in any event, removed from the action the issue of ineffective assistance, thus eliminating any possibility that the collateral adjudication of generalized claims of ineffective assistance might be used to obtain relief from individual judgments of conviction.[6] Here we emphasize that our recognition that plaintiffs may have claims for constructive denial of counsel should not

---

**5.** Defendants' contention that the action is, in light of this circumstance, moot overlooks the well-established exception to the mootness doctrine for recurring claims of public importance typically evading review (*see Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714-715 [1980]).

**6.** It follows that if plaintiffs' claims are found to be meritorious after trial, such a determination will not entitle them to vacatur of their criminal convictions. And, although the issue is not specifically raised, we note in the

be viewed as a back door for what would be nonjusticiable assertions of ineffective assistance seeking remedies specifically addressed to attorney performance, such as uniform hiring, training and practice standards. To the extent that a cognizable Sixth Amendment claim is stated in this collateral civil action, it is to the effect that in one or more of the five counties at issue the basic constitutional mandate for the provision of counsel to indigent defendants at all critical stages is at risk of being left unmet because of systemic conditions, not by reason of the personal failings and poor professional decisions of individual attorneys. While the defense of indigents in the five subject counties might perhaps be improved in many ways that the Legislature is free to explore, the much narrower focus of the constitutionally based judicial remedy here sought must be simply to assure that every indigent defendant is afforded actual assistance of counsel, as *Gideon* commands. Plainly, we do not, even while narrowing the scope of this action as we believe the law requires, deny plaintiffs a remedy for systemic violations of *Gideon*, as the dissent suggests. It is rather the dissent that would foreclose plaintiffs from any prospect of obtaining such relief. And, when all is said and done, the dissent's proposed denial is premised solely upon the availability of relief from a judgment of conviction. Neither law, nor logic, nor sound public policy dictates that one form of relief should be preclusive of the other.

As against the fairly minimal risks involved in sustaining the closely defined claim of nonrepresentation we have recognized must be weighed the very serious dangers that the alleged denial of counsel entails. " 'Of all [of] the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have' " (*United States v Cronic*, 466 US at 654, quoting Schaefer, *Federalism and State Criminal Procedure*, 70 Harv L Rev 1, 8 [1956]). The failure to honor this right, then, cannot but be presumed to impair the reliability of the adversary process through which criminal justice is under our system of

---

same connection that, in view of the circumstance that this action will not disturb the progress or outcomes of plaintiffs' criminal actions (*cf. Matter of Lipari v Owens*, 70 NY2d 731 [1987]; *Matter of Veloz v Rothwax*, 65 NY2d 902 [1985]), and that the action seeks relief largely unavailable in the context of the underlying individual criminal actions, the rule generally applicable to bar collateral claims for equitable intervention in ongoing criminal prosecutions (*see e.g. Kelly's Rental v City of New York*, 44 NY2d 700 [1978]) would not be properly relied upon by the State here.

government dispensed. This action properly understood, as it has been by distinguished members of the prosecution and defense bars alike, does not threaten but endeavors to preserve our means of criminal adjudication from the inevitably corrosive effects and unjust consequences of an unfair adversary process.

It is not clear that defendants actually contend that stated claims for the denial of assistance of counsel would be nonjusticiable; their appellate presentation, both written and oral, has been principally to the effect that the claims alleged are exclusively predicated on deficient performance, a characterization which we have rejected. Supposing, however, a persisting, relevant contention of nonjusticiability, it is clear that it would be without merit. This is obvious because the right that plaintiffs would enforce—that of a poor person accused of a crime to have counsel provided for his or her defense—is the very same right that *Gideon* has already commanded the states to honor as a matter of fundamental constitutional necessity. There is no argument that what was justiciable in *Gideon* is now beyond the power of a court to decide.

It is, of course, possible that a remedy in this action would necessitate the appropriation of funds and perhaps, particularly in a time of scarcity, some reordering of legislative priorities. But this does not amount to an argument upon which a court might be relieved of its essential obligation to provide a remedy for violation of a fundamental constitutional right (*see Marbury v Madison*, 1 Cranch [5 US] 137, 147 [1803] ["every right, when withheld, must have a remedy, and every injury its proper redress"]).

We have consistently held that enforcement of a clear constitutional or statutory mandate is the proper work of the courts (*see Campaign for Fiscal Equity v State of New York*, 86 NY2d 307 [1995]; *Jiggetts v Grinker*, 75 NY2d 411 [1990]; *McCain v Koch*, 70 NY2d 109 [1987]; *Klostermann v Cuomo*, 61 NY2d 525 [1984]), and it would be odd if we made an exception in the case of a mandate as well-established and as essential to our institutional integrity as the one requiring the State to provide legal representation to indigent criminal defendants at all critical stages of the proceedings against them.

Assuming the allegations of the complaint to be true, there is considerable risk that indigent defendants are, with a fair degree of regularity, being denied constitutionally mandated counsel in

the five subject counties. The severe imbalance in the adversary process that such a state of affairs would produce cannot be doubted. Nor can it be doubted that courts would in consequence of such imbalance become breeding grounds for unreliable judgments. Wrongful conviction, the ultimate sign of a criminal justice system's breakdown and failure, has been documented in too many cases. Wrongful convictions, however, are not the only injustices that command our present concern. As plaintiffs rightly point out, the absence of representation at critical stages is capable of causing grave and irreparable injury to persons who will not be convicted. *Gideon*'s guarantee to the assistance of counsel does not turn upon a defendant's guilt or innocence, and neither can the availability of a remedy for its denial.

Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the complaint in accordance with this opinion, and remitting the case to that court to consider issues raised but not determined on the appeal to that court, and, as so modified, affirmed.

PIGOTT, J. (dissenting). There is no doubt that there are inadequacies in the delivery of indigent legal services in this state, as pointed out by the New York State Commission on the Future of Indigent Defense Services, convened by former Chief Judge Kaye. I respectfully dissent, however, because, despite this, in my view, the complaint here fails to state a claim, either under the theories proffered by plaintiffs—ineffective assistance of counsel and deprivation of the right to counsel at a critical stage (arraignment)—or under the "constructive denial" theory read into the complaint by the majority.

The majority rightly rejects plaintiffs' ineffective assistance cause of action; such claims are limited to a case-by-case analysis and cannot be redressed in a civil proceeding. Rather than dismissing that claim, however, the majority replaces it with a "constructive denial" cause of action that, in my view, is nothing more than an ineffective assistance claim under another name.

The allegations in the complaint can be broken down into two categories: (1) the deprivation of "meaningful and effective assistance of counsel," and (2) the deprivation of the right to counsel at a "critical stage" of the proceedings, i.e., the arraignment. The claims under the former category are many: lack of a sufficient opportunity to discuss the charges with their attorney

or participate in their defense; lack of preparation by counsel; denial of investigative services; lack of "vertical representation;"[1] refusal of assigned counsel to return phone calls or accept collect calls; inability to leave messages on assigned counsel's answering machine due to a full voicemail box, etc.

The majority rejects plaintiffs' main claim that the complaint states a cause of action for ineffective assistance of counsel under *Strickland v Washington* (466 US 668 [1984]),[2] finding "a measure of merit" to defendants' arguments that such claims are premised on trial counsel's constitutionally deficient performance and do not form the basis for systemic relief (majority op at 17). I agree, and would affirm the Appellate Division's determination in that regard, because the *Strickland* standard is limited to whether an individual has received the effective assistance of counsel and cannot be used to attack alleged systemic failures, and the allegations of the complaint support no broader reading.

Rather than stopping at its rejection of the *Strickland* standard with respect to these allegations, however, the majority advances a third theory, and reads the complaint as stating a claim for "constructive denial" of the right to counsel, i.e., that upon having counsel appointed, plaintiffs received only "nominal" representation, such that there is a question as to whether the counties were in compliance with the constitutional mandate of *Gideon* (majority op at 22-23).

In support of this rationale, the majority relies on *United States v Cronic* (466 US 648 [1984]), which recognizes a "narrow exception" to *Strickland*'s requirement that a defendant asserting an ineffective assistance of counsel claim must demonstrate a deficient performance and prejudice (*Florida v Nixon*, 543 US 175, 190 [2004]). In other words, *Cronic*, too, is an ineffective assistance of counsel case—decided on the same day as *Strickland*—but one that allows the courts to find a Sixth Amendment violation " 'without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial,' when 'circumstances [exist] that are so likely

---

**1.** Presumably this refers to the fact that in some jurisdictions, a defendant may be represented by one lawyer in the local criminal court and have a different lawyer assigned in superior court.

**2.** Much of the focus of the majority is on the so-called *Strickland* standard, with respect to ineffective assistance of counsel. However, the "meaningful representation" standard obviously remains the standard to be applied in this state (*see People v Baldi*, 54 NY2d 137 [1981]).

to prejudice the accused that the cost of litigating their effect in a particular case is unjustified' " (*Wright v Van Patten*, 552 US 120, 124 [2008] [citations omitted]).

*Cronic*'s "narrow exception" applies to individual cases where: (1) there has been a "complete denial of counsel"; i.e., the defendant is denied counsel at a critical stage of the trial; (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; or (3) "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial" (466 US at 659-660).

*Cronic*'s holding is instructive, if only to point out that the Supreme Court was reaching the obvious conclusion that, in *individual cases*, the absence or inadequacy of counsel must generally fall within one of those three narrow exceptions.[3] Constructive denial of counsel is a branch from the *Strickland* tree, with *Cronic* applying only when the appointed attorney's representation is so egregious that it's as if defendant had no attorney at all. Therefore, whether a defendant received ineffective assistance of counsel under *Strickland* or is entitled to a presumption of prejudice under *Cronic* is a determination that can only be made *after* the criminal proceeding has ended; neither approach lends itself to a proceeding like the one at bar where plaintiffs allege prospective violations of their Sixth Amendment rights.

The majority does not explain how it can conclude, on one hand, "that effective assistance is a judicial construct designed to do no more than protect an *individual* defendant's right to fair adjudication" and "is *not* a concept capable of expansive application to remediate systemic deficiencies" (majority op at 17 [emphasis supplied]), and on the other hand that a "constructive denial" of counsel theory could potentially apply to this class of individuals who, when they commenced the action, had not reached a resolution of their criminal cases. Courts reviewing the rare constructive denial claims have done so by looking

---

**3.** Even the defendant in *Cronic* was not entitled to rely on any of the exceptions delineated in that opinion, notwithstanding the fact that his retained counsel withdrew shortly before the trial date and, just 25 days before trial, the court appointed a young lawyer with a real estate practice to represent defendant in a mail fraud case that had taken the Government 4$^{1}$/$_{2}$ years to investigate. Supreme Court held that any errors by counsel at trial were to be examined using the *Strickland* test.

at the particular egregious behavior of the attorney in the particular case *after* the representation has concluded (*see e.g. Burdine v Johnson*, 262 F3d 336 [5th Cir 2001], *cert denied sub nom. Cockrell v Burdine*, 535 US 1120 [2002] [defense counsel slept during capital trial]; *Restrepo v Kelly*, 178 F3d 634 [2d Cir 1999]; *Rickman v Bell*, 131 F3d 1150 [6th Cir 1997], *cert denied* 523 US 1133 [1998] [defense counsel acted as second prosecutor]; *Tippins v Walker*, 77 F3d 682, 686 [2d Cir 1996] [counsel slept through trial]; *Harding v Davis*, 878 F2d 1341 [11th Cir 1989] [constructive denial where counsel responded to defendant's displeasure of his representation by remaining silent and inactive at trial until replaced by the pro se defendant]; *Jenkins v Coombe*, 821 F2d 158, 161 [2d Cir 1987], *cert denied* 484 US 1008 [1988] [filing cursory five-page brief on appeal]).

That is not to say that a claim of constructive denial could never apply to a class where the State effectively deprives indigent defendants of their right to counsel, only that the various claims asserted by plaintiffs here do not rise to that level. Here, plaintiffs' complaint raises basic ineffective assistance of counsel claims in the nature of *Strickland*[4] (i.e., counsel was unresponsive, waived important rights, failed to appear at hearings, and was unprepared at court proceedings) and not the egregious type of conduct found in *Cronic*. Plaintiffs' mere lumping together of 20 generic ineffective assistance of counsel claims into one civil pleading does not ipso facto transform it into one alleging a systemic denial of the right to counsel.

Addressing plaintiffs' second theory—deprivation of the right to counsel at the arraignment—the majority posits that plaintiffs have stated a cognizable claim because 10 of them were arraigned without counsel, and eight of those remained in custody because they could not meet the bail that was set (majority op at 19).

It is undisputed that a criminal defendant " 'requires the guiding hand of counsel at every step in the proceedings against him' " (*Gideon v Wainwright*, 372 US 335, 345 [1963], quoting *Powell v Alabama*, 287 US 45, 69 [1932]). But the majority's bare conclusion that any arraignment conducted without the presence of counsel renders the proceedings a violation of the Sixth Amendment flies in the face of reality.

---

4. Nor, in my view, are such claims any different from the generic ineffective assistance of counsel claims routinely analyzed by state courts under this State's "meaningful representation" standard as enunciated in *Baldi*.

The framework of CPL article 180 illustrates this point.[5] That provision presupposes that a criminal defendant, upon arraignment, may not have yet retained counsel or, due to indigency, requires the appointment of one. CPL 180.10 mandates that, in addition to apprising him of, and furnishing him with, a copy of the charges against him (*see* CPL 180.10 [1]), the court must also inform an unrepresented defendant that he is entitled to, among other things, "an adjournment for the purpose of obtaining counsel" (CPL 180.10 [3] [a]) and the appointment of counsel by the court if "he is financially unable to obtain the same" (CPL 180.10 [3] [c]).[6] The court must also give the defendant the opportunity to avail himself of those rights and "must itself take such affirmative action as is necessary to effectuate them" (CPL 180.10 [4]). This statute is a prophylactic one whose purpose is to protect a defendant's Sixth Amendment rights because, even in a situation where a defendant chooses to go forward without counsel, "the court must permit him to do so if it is satisfied that he made such decision with knowledge of the significance thereof" and, in a situation where it is not so satisfied, may decide not to proceed until defendant obtains or is appointed counsel (CPL 180.10 [5]).

Giving plaintiffs the benefit of every favorable inference (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), the complaint nevertheless fails to state a cause of action for the deprivation of the right to counsel at arraignment. One reason is that there is no allegation that the failure to have counsel at one's first court appearance had an adverse effect on the criminal proceedings. The Second Circuit has rejected the assertion "that the absence of counsel upon arraignment is an inflexible, per se violation of

**5.** CPL 180.10 addresses the procedure to be followed at a defendant's arraignment on a felony complaint and the defendant's rights in that regard. Other provisions of the Criminal Procedural Law contain similar requirements. For instance, CPL 210.15 addresses the scenario where a defendant is arraigned on an indictment; however, in the latter scenario, the court's duties and responsibilities to apprise a defendant of his rights when appearing without counsel are essentially the same. CPL 170.10 addresses arraignments relative to an information, simplified traffic information, prosecutor's information or misdemeanor complaint, and sets forth the procedures the court must follow in apprising a defendant of his right to counsel and/or assignment of counsel.

**6.** Indeed, the Supreme Court of the United States has favorably cited to CPL 180.10 in support of its observation that New York is one of the 43 states that "take the first step toward appointing counsel 'before, at or just after initial appearance' " (*Rothgery v Gillespie County*, 554 US 191, 204 and n 14 [2008]).

the Sixth Amendment" (*United States ex rel. Caccio v Fay*, 350 F2d 214, 215 [2d Cir 1965]). Where a criminal defendant is arraigned without the presence of counsel and pleads not guilty—or the court enters a not guilty plea on his behalf—there is no Sixth Amendment violation (*see United States ex rel. Combs v Denno*, 357 F2d 809, 812 [2d Cir 1966]; *United States ex rel. Hussey v Fay*, 220 F Supp 562 [SD NY 1963]; *see also Holland v Allard*, 2005 WL 2786909, 2005 US Dist LEXIS 46609 [ED NY 2005]). The explanation as to why this is so is simple:

> "Under New York law, a defendant suffers no . . . prejudice [by the imposition of a not guilty plea on arraignment without benefit of counsel], for whatever counsel could have done upon arraignment on defendant's behalf, counsel were free to do thereafter. There is nothing in New York law which in any way prevents counsel's later taking advantage of every opportunity or defense which was originally available to a defendant upon his initial arraignment" (*Hussey*, 220 F Supp at 563, citing *People v Combs*, 19 AD2d 639 [2d Dept 1963]).

As pleaded, none of the 10 plaintiffs arraigned without counsel entered guilty pleas and, indeed, in compliance with the strictures of CPL 180.10, all met with counsel shortly after the arraignment. Nor is there any claim that the absence of counsel prejudiced these plaintiffs (*cf. White v Maryland*, 373 US 59 [1963] [petitioner, at initial proceeding without counsel, pleaded guilty without the knowledge that even if that plea was vacated after counsel was appointed, it was still admissible at trial, such that lack of counsel at initial proceeding required reversal of conviction]; *Hamilton v Alabama*, 368 US 52, 54 [1961] [denial of counsel at arraignment was reversible error where, under Alabama law, certain defenses had to be asserted during that proceeding or could have been "irretrievably lost"]).

The majority implies that the complaint pleads a *Gideon* violation because certain of the plaintiffs were not represented when the court arranged for the imposition of bail at the arraignment (*see* CPL 170.10 [7]; 180.10 [6]; 210.15 [6]).[7] Quite often this initial appearance inures to the benefit of defendant who may

---

7. The majority observes that a bail hearing is a critical stage of the criminal process (majority op at 20). While that may be a correct statement of the law, it has little application to these facts, as none of these plaintiffs asserts that they were forced to participate in a bail hearing without the aid of counsel.

be released on his own recognizance or on manageable bail within hours of arrest. The only substantive allegations plaintiffs make relative to bail is that assigned counsel failed to advocate for lower bail at the arraignment or move for a bail reduction post-arraignment. If anything, the complaint alleges a claim for ineffective assistance of counsel under the federal or state standard, but the majority has rejected such a claim in this litigation (majority op at 17-19).

Finally, the majority notes that plaintiffs do not seek relief within the context of their own criminal cases, and therefore allowing plaintiffs to proceed on their claims "would [not] impede the orderly progress of [the] underlying criminal actions," asserting that even if plaintiffs' claims are found to be meritorious after trial they would not be entitled to a vacatur of their criminal convictions (majority op at 24 and 25 n 6). In my view, if plaintiffs are able to establish a violation of *Gideon*, they should not be foreclosed from seeking a remedy; if plaintiffs are willing to waive any remedy to which they may be entitled, as they are doing here, then I see no reason why the courts have any business adjudicating this matter.

While the perfect system of justice is beyond human attainment, plaintiffs' frustration with the deficiencies in the present indigent defense system is understandable. Legal services for the indigent have routinely been underfunded, and appointed counsel are all too often overworked and confronted with excessive caseloads, which affects the amount of time counsel may spend with any given client. Many, if not all, of plaintiffs' grievances have been acknowledged in the Kaye Commission Report, which is implicitly addressed—as it should be—to the Legislature, the proper forum for weighing proposals to enhance indigent defense services in New York. This complaint is, at heart, an attempt to convert what are properly policy questions for the Legislature into constitutional claims for the courts.

Accordingly, I would affirm the order of the Appellate Division.

Judges CIPARICK, GRAFFEO and JONES concur with Chief Judge LIPPMAN; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judges READ and SMITH concur.

Order modified, etc.