[973 NE2d 1272, 950 NYS2d 498]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AMBER MARACLE, Appellant. (Appeal No. 1.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AMBER MARACLE, Appellant. (Appeal No. 2.)

Argued May 29, 2012; decided June 27, 2012

### APPEARANCES OF COUNSEL

*Lipsitz Green Scime Cambria, LLP,* Buffalo (*Timothy P. Murphy* of counsel), for appellant in the first and second above-entitled actions.

*Frank A. Sedita, III, District Attorney,* Buffalo (*Matthew B. Powers* and *Donna A. Milling* of counsel), for respondent in the first and second above-entitled actions.

### OPINION OF THE COURT

MEMORANDUM.

The orders of the Appellate Division should be reversed, and the matter remitted to that Court for further proceedings consistent with this memorandum.

Defendant, a bookkeeper/receptionist for a fence installation business, was indicted on one count of grand larceny in the second degree (Penal Law § 155.40 [1]) and four counts of forgery in the second degree (Penal Law § 170.10 [1]) for stealing money from her employer. She was assigned counsel at her arraignment and entered a plea of not guilty to the charges. On April 20, 2009, a month after her arraignment, defendant, unemployed and pregnant (and mother of three), appeared and, upon counsel's advice, pleaded guilty to the entire indictment.

The court, prior to any presentence investigation, advised defendant that should she come up with one half of the restitution owed—$23,000—by the time of sentencing, it would sentence her to five years' probation during which time she would be required to pay the remaining balance. She was further advised that if she failed to come up with the initial $23,000, there would be no promise as to her sentence but she wouldn't be able to withdraw her *plea.* The court advised defendant that, by pleading guilty, she was "voluntarily waiving [her] right to appeal [her] *conviction* in this case" (emphasis supplied). The court scheduled sentencing for September 25, 2009.

In the interim, the probation department interviewed defendant and recommended, based upon its investigation, a period of probation rather than incarceration. In September 2009, defendant appeared at sentencing without having made any

restitution payments. Assigned counsel stated that defendant "knows . . . she's going to prison . . . [and] understands that the Court's commitment was contingent, that the contingency was not met, and that the only alternative is to put her in prison." But at the earlier plea hearing the court had not stated that prison for defendant was a certainty if she failed to make any payments. Rather, defendant was simply told that if she "fail[ed] to comply with any of these conditions, especially the condition of paying one half restitution by the sentence date, that there will be no promise as to your sentence and you will not be able to withdraw your *plea*" (emphasis supplied). Thus, the sentencing court still had the option of imposing a sentence of probation, as recommended in the presentence investigation, with a restitution order. Instead, it (mistakenly) sentenced defendant to the maximum terms of 5 to 15 years for *four* counts of grand larceny in the second degree, and neglected to sentence her at all relative to the four counts of forgery. At the conclusion of sentencing, the court advised this defendant, who had presumably waived her right to appeal, that she had 30 days within which to file a notice of appeal.

Upon receiving notice from the Department of Corrections and Community Supervision that defendant had been sentenced improperly, the sentencing court recalled defendant from prison and sentenced defendant to the maximum term on each and every count of the indictment—5 to 15 years' imprisonment on the sole grand larceny count and $2^{1}/_{3}$ to 7 years' imprisonment on the second degree forgery counts. The court, again, advised defendant that she had 30 days within which to file a notice of appeal.

In Appeal No. 1, the Appellate Division dismissed the appeal to that Court insofar as it pertained to sentencing on the conviction of four counts of forgery in the second degree and otherwise affirmed the judgment of conviction and sentence. In Appeal No. 2, the Appellate Division affirmed defendant's resentencing on the forgery counts. The Appellate Division concluded that defendant's waiver of her right to appeal encompassed her challenge to the severity of the sentence (85 AD3d 1652 [4th Dept 2011]; 85 AD3d 1654 [4th Dept 2011]). A Judge of this Court granted leave from both orders of the Appellate Division.

The plea colloquy fails to establish that defendant knowingly and intelligently waived her right to appeal the severity of her sentence, and, as a result, the matter should be remitted to the Appellate Division so that it may, should it so choose, exercise its interest of justice jurisdiction (*see* CPL 470.15 [6] [b]).

While it is evident that defendant waived her right to appeal her *conviction*, there is no indication in the record that defendant waived the right to appeal the harshness of her *sentence.* She seeks only the right to appeal the harshness of the sentence that went from one of probation to a maximum sentence of imprisonment on each count of the indictment because she failed to comply with a condition set by the court.

The CPL makes clear the distinction between a conviction and a sentence. A "conviction" is defined as "the entry of a plea of guilty to, or a verdict of guilty upon, an accusatory instrument other than a felony complaint, or to one or more counts of such instrument" (CPL 1.20 [13]). "Sentence" is defined as "the imposition and entry of sentence upon a conviction" (CPL 1.20 [14]). Both the "conviction" and the "sentence" comprise the "judgment," which is "completed by the imposition and entry of the sentence" (CPL 1.20 [15]). As such, although defendant waived her right to appeal the conviction, she never expressly waived her right to appeal the sentence.

Unlike the situation in *People v Hidalgo* (91 NY2d 733, 737 [1998]), it is not clear that "the trial court engaged in a full and adequate colloquy, and [that] defendant expressly waived her right to appeal without limitation." It is evident from the colloquy that the court, at most, apprised defendant that if she did not pay one half of the restitution by sentencing, there would be no promise as to her sentence and that she would not be able to withdraw her *plea*—something she is not seeking. There was no mention of defendant not being able to appeal the harshness of her sentence.

The most critical error that occurred here, and the one that distinguishes this case from *Hidalgo*, is that during the plea colloquy in this case, the court did not explain that the appeal waiver would bar defendant from not only challenging the sentence she hoped to receive, i.e., five years' probation, but also any sentence that the court would impose in the event defendant failed to meet the court's condition of paying $23,000 by the date of sentencing. It cannot be said that, at the time of her plea colloquy five months before the imposition of sentence, defendant knowingly and intelligently waived her right to appeal a sentence that, at that point, had not yet been declared by the court. In that respect, this case is more analogous to our holding in *People v Johnson* (14 NY3d 483 [2010]).

In *Johnson*, the court promised the defendant that he would be adjudicated a youthful offender in exchange for his guilty

plea (and waiver of his right to appeal), but, after reviewing the presentence report, reconsidered that promise at sentencing, claiming that youthful offender status would have been "inappropriate" given the nature of the offense (*id*. at 485). The court denied defendant youthful offender treatment.* We held that because the trial court failed to apprise the defendant that it was reserving its approval of the plea agreement until it reviewed the presentencing report, the defendant could not have knowingly and intelligently waived his right to appeal the court's determination to sentence the defendant as an adult (thereby subjecting defendant to a greater prison sentence). Thus, when the court announced that it was imposing a greater sentence than the defendant had expected, "it was incumbent on the court to elicit defendant's continuing consent to waive his right to appeal," although it was unnecessary for the court "to reallocute defendant on his decision to plead guilty" (*Johnson*, 14 NY3d at 487).

Indeed, it was not necessary here (as it was in *Johnson*) to offer plea withdrawal at all. She had conceded her guilt at the plea hearing, the court apprised her that she would not be able to withdraw her plea, and the record supports a conclusion that she knowingly and intelligently pleaded guilty to all counts of the indictment. Absent the knowing waiver of defendant's right to appeal her sentence, the Appellate Division was deprived of its right to review the harshness of that sentence and therefore, the matter is remitted to that Court for that purpose.

We reject defendant's ineffective assistance of counsel claim based on the record before us (*see People v Baldi*, 54 NY2d 137, 147 [1981]). To the extent that defendant seeks to advance such a claim or to challenge the voluntariness of her plea on matters outside the record, she may do so "by affidavit in support of a CPL 440.10 motion" (*People v Gravino*, 14 NY3d 546, 558 [2010]).

GRAFFEO, J. (dissenting). I respectfully dissent because the majority's rationale conflicts with the rule established in *People v Hidalgo* (91 NY2d 733 [1998]) and there is no compelling justification for eroding that precedent.

The majority's rationale is especially troubling since the plea colloquy in *Hidalgo* was similar to the colloquy in the case now

---

* The defendant rejected the court's offer to withdraw his plea and proceed to trial.

before us. The defendant in *Hidalgo* was informed about the possible sentencing options under her plea agreement since no specific sentencing promise was made and she also waived the right to appeal her "conviction" (*id.* at 735):

> "THE COURT: I understand as part of this plea arrangement you are giving up your right to appeal this *conviction*; is that correct? . . .
>
> "DEFENDANT HIDALGO: Yes.
>
> "THE COURT: Do you understand that means you cannot come back to this Court or to any court to set aside this *conviction* once I accept the plea? . . .
>
> "DEFENDANT HIDALGO: Yes.
>
> "THE COURT: Have you discussed that with your attorney? . . .
>
> "DEFENDANT HIDALGO: Yes" (emphasis added).

Although we acknowledged that Hidalgo "did not explicitly waive her right to challenge her sentence during the plea colloquy" (*id.* at 737), we unanimously concluded that the "general unrestricted waiver encompassed her right to challenge her sentence as harsh and excessive," despite the fact that she "did not know her specific sentence at the time of the waiver" and entry of a guilty plea (*id.*).

When defendant in this case pleaded guilty under an agreement that avoided a term of incarceration, she was similarly unaware of the particular sentence that would be imposed in the event that she failed to adhere to the terms of the plea bargain. Like Hidalgo, defendant expressly waived her right to appeal the "conviction," without reference to the sentence—a colloquy functionally identical to the colloquy in *Hidalgo*:

> "THE COURT: As a condition of this plea, the DA is requiring that you waive your right to appeal your *conviction* in this case. Have you had an opportunity to discuss this with your attorney?
>
> "THE DEFENDANT: Yes.
>
> "THE COURT: Do you understand that this case will be over and that it will go no further?
>
> "THE DEFENDANT: Yes.

"THE COURT: Having this in mind, are you voluntarily waiving your right to appeal your *conviction* in this case?

"THE DEFENDANT: Yes" (emphasis added).

Because defendant's waiver of the right to appeal the "conviction" is indistinguishable from *Hidalgo*—more precisely, in both cases "[t]here was no mention of [the] defendant not being able to appeal the harshness of her sentence" (majority mem at 928)—pursuant to the rule set forth in *Hidalgo*, defendant's waiver should be viewed as including her right to challenge the sentence as excessive. The Appellate Division therefore properly declined to consider the merits of defendant's argument.

The only practical difference between this case and *Hidalgo* is that Hidalgo did not violate her plea bargain, but that fact played no part in the rationale we adopted. As a result of the majority's attempt to reach a different result, the outcome is that appellate review of an excessive sentence claim will be barred if a defendant abides by the terms of a plea agreement but appellate review will be permitted if the defendant, like Maracle, breached the plea bargain. Why should a non-compliant defendant be rewarded because she did not adhere to the terms of the agreement while a defendant who complies with the terms of a conditional plea will be foreclosed from further judicial review of the sentence imposed?*

There is no reasoned basis for the majority to circumvent *Hidalgo*—it clearly held that a reference to "conviction" includes the sentence. That probably explains why defendant has not raised the argument that the majority adopts. I believe that stare decisis is an important principle premised on the rule of law (*see e.g. People v Taylor*, 9 NY3d 129, 148 [2007]; *People v Bing*, 76 NY2d 331, 338 [1990]; *People v Hobson*, 39 NY2d 479, 488 [1976]) and that altering this established precedent may be fraught with unanticipated consequences.

Indeed, undermining the validity of these waivers could have ramifications beyond the scope of this particular case. For years, judges accepting guilty pleas have justifiably relied on *Hidalgo*'s

---

* *People v Johnson* (14 NY3d 483 [2010]), cited by the majority, is not analogous to this case. The waiver of appeal in *Johnson* was elicited in exchange for a promise of youthful offender treatment. We held that the court's withdrawal of the promise nullified the waiver as a simple matter of quid pro quo (*see id.* at 487). Here, in stark contrast, the court strictly abided by the terms of the plea agreement and did not contradict any condition attached to the appellate waiver.

unequivocal declaration that a waiver of appeal from a "conviction" encompasses a challenge to the harshness of a sentence that the defendant was informed about before consenting to the waiver. Consequently, waivers that refer to the "conviction" alone are most likely common. Courts considering such waivers will now have to decide whether *Hidalgo* or *Maracle* controls in each situation and the unfortunate result will be inconsistent decisions in the trial and intermediate appellate courts.

Defendant's knowing, voluntary and intelligent waiver of her right to challenge the sentence as excessive does not mean that she is bereft of any potential remedy. In light of the facts of this case, nothing prevents her from filing a motion under article 440 of the Criminal Procedure Law to challenge the effectiveness of her legal representation in connection with the guilty plea or the sentencing proceeding based on the status of her financial resources, her family's situation at the time of the plea or her plans to acquire the necessary restitution funds, none of which are revealed in the present record (*see e.g. People v Gravino*, 14 NY3d 546, 558 [2010]). Although the record before us does not indicate that counsel provided less than meaningful representation, an article 440 motion would provide defendant an opportunity to show that it was impossible for her to comply with the restitution condition of the plea agreement, that her attorney knew or should have known about her inability to pay and that it was unreasonable for the lawyer to recommend acceptance of the plea bargain.

For all of these reasons, I would affirm the order of the Appellate Division enforcing the appellate waiver.

Chief Judge LIPPMAN and Judges CIPARICK, SMITH, PIGOTT and JONES concur in memorandum; Judge GRAFFEO dissents and votes to affirm in a separate opinion in which Judge READ concurs.

Orders reversed, etc.