[37 NYS3d 4]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWIGHT SMITH, Appellant.

First Department, August 25, 2016

### APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Matthew Bova* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Marianne Stracquadanio, Stanley R. Kaplan* and *Ramandeep Singh* of counsel), for respondent.

### OPINION OF THE COURT

Manzanet-Daniels, J.

We find defendant's right-to-counsel claim to be meritorious. The court here pressured defendant into giving a buccal swab for DNA testing, incorrectly advised him that he had no arguments against the prosecutor's untimely discovery, and ignored defendant's explicit and repeated requests for a lawyer during

the critical pretrial stage of the proceedings. Proceeding without counsel under the circumstances violated defendant's Sixth Amendment rights.

On September 7, 2007, the Office of the Chief Medical Examiner reported that it had found biological material on items inside of the apartment where the homicide occurred.

On March 11, 2009—more than seven months after defendant's arraignment, and nearly six months after the prosecution's discovery request deadline under CPL 240.90 (1)—the People filed a motion for discovery of a saliva sample. The motion did not even purport to explain why the prosecution had missed the discovery deadline by 179 days.

After the People served defense counsel with a written copy of the motion to compel in court the next day, the prosecutor asked defense counsel whether "it's something that defense is willing to consent to," and defense counsel replied, "I will discuss it with my client, Your Honor." The court stated, "If your client is not inclined to agree, would you put in your answer," and defense counsel replied, "Yes, I will."

Codefendant Fair's attorney opposed the DNA test, contending that the prosecution had violated the 45-day discovery deadline (CPL 240.90 [1]). Defendant did not file papers opposing the motion to compel.

On April 30, 2009, defense counsel Gilbert Parris appeared before the court without defendant present and asked to be excused from the case because defendant would not be able to pay his fees. Following a discussion off the record, the court stated that "[w]ith respect to this matter, Mr. Parris will be relieved." When the court officer stated that defendant had not yet been produced, defense counsel stated, "He's not produced so I waive my client's production in this matter." The prosecutor stated, "We're going to ask the card be held so we can go get a swab."

Defendant appeared before the court later that same day, without an attorney. The court asked defendant whether he would "mind doing [the buccal swab] without your lawyer in light of the fact that there has been an order signed by this Court indicating that you have to do that?" In the exchange that ensued, defendant repeatedly indicated that he wanted to wait for his lawyer before agreeing to provide a sample or actually providing one. Defendant stated that he "wasn't aware of [the] buccal swab" and had not spoken to his attorney for "two months." He even stated, "I will probably want to [file] a motion to oppose."

Instead of adjourning, the court informed defendant that the motion practice "was already taken care of. The motions are finished. All I want to ask you is to cooperate." Defendant continued to insist that counsel be present, stating, "I don't want to do it. I want to wait for the attorney to be here. I don't mind doing [the test], but with [the attorney's] consent. I don't want to do things I'm not aware of basically. I don't want to do something that's not in my favor."

The court retreated from its initial statement that it would "wait for [defendant's] lawyer," advising defendant that his resistance to the DNA test was futile. The court explained that attorney Parris had consented to the taking of a buccal swab, and that "[t]he [new] attorney is not going to be able to help you in any way of preventing because I issued the order." The court explained that refusing to proceed with the test would significantly delay the trial, and suggested that it would order that the sample be obtained from defendant involuntarily if necessary. When defendant continued to insist that a lawyer be present, the court stated that he was "making a mistake," admonishing him that he had "no basis for fighting [the test]."

Defendant still declined to consent, explaining that while he "trust[ed]" the judge, he did not "know the law." The judge replied, "I know the law." Defendant stated that he wanted to "make sure," but the judge responded, "It is absolutely a hundred [percent]," and asked him whether he "want[ed] to see the order in writing? Would that change your mind?" Defendant replied, "That will help." The judge showed defendant the order, and defendant acquiesced.

■ As an initial matter, we find that defendant's putative waiver of his right to appeal to be invalid inasmuch as the court failed to apprise defendant that his right to appeal was separate and distinct from those trial rights automatically forfeited upon entry of his guilty plea (*see People v Oquendo*, 105 AD3d 447, 448 [1st Dept 2013], *lv denied* 21 NY3d 1007 [2013]). Indeed, the court expressly instructed defendant that he retained the right to appeal "constitutional" errors.

Further, the "waiver" included the illegal notice of appeal provision we recently invalidated in *People v Santiago* (119 AD3d 484 [1st Dept 2014], *lv denied* 24 NY3d 964 [2014]) because it purports to foreclose appellate review of claims found to be unwaivable owing to their constitutional significance.

Claims alleging deprivation of the right to counsel "go to the very heart of the process" and survive a guilty plea (*see People*

*v Griffin*, 20 NY3d 626, 630 [2013] [internal quotation marks omitted]).

■ The right to counsel attaches at arraignment and requires the presence of counsel at each subsequent "critical stage of the proceedings" (*Hurrell-Harring v State of New York*, 15 NY3d 8, 20 [2010] [internal quotation marks omitted]). The period between arraignment and trial when the case is "factually developed and researched," "plea negotiations conducted, and pretrial motions filed" is "critical." (*Id.* at 21-22.) As recognized by our own Court of Appeals, "[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself" (*id.* at 22 [internal quotation marks omitted]; *see also* CPL 180.10 [3] [explicitly providing for the right to counsel "at the arraignment and at every subsequent stage of the action," and prohibiting a court from going forward without counsel for the defendant, unless the defendant has knowingly agreed to counsel's absence]).

The pretrial proceedings concerning the DNA test were "critical" within the meaning of the law. The DNA test fundamentally changed the outcome of the case, undermining defendant's plea bargaining posture and his chances for acquittal.

The order was based on the putative consent of former counsel Mr. Parris. However, defendant's protests put the court on notice that defendant had never communicated with his former attorney about the issue, nor did he wish to consent to the test. Defendant was unrepresented not only in the sense that he had been denied an attorney for the proceeding, but insofar as his former attorney evidently had never discussed the matter with him. Had the court appointed new counsel, he or she could have withdrawn consent and sought preclusion on the ground that the prosecutor had failed to show good cause for the late discovery under CPL 240.90 (1).

The People's argument that defendant's "concerns" are more properly expressed via a CPL 440.10 motion for ineffective assistance is unpersuasive. Claims that attorneys "waived important rights without authorization from their clients . . . [are] reasonably understood to allege nonrepresentation rather than ineffective representation" (*Hurrell-Harring v State*, 15 NY3d at 22).

■ The court rejected defendant's repeated pleas for a lawyer, pressured him into submitting to the DNA test, and incorrectly advised him that he had no argument against the

prosecutor's untimely discovery. The denial of defendant's repeated entreaties to consult with a lawyer during this critical stage of the proceedings violated his Sixth Amendment rights. The deprivation of his Sixth Amendment rights is of constitutional dimension and is not subject to a harmless error analysis (*see People v Hilliard*, 73 NY2d 584, 587 [1989]). The appropriate remedy under the circumstances is to vacate both pleas, and to dismiss the indictment (*see Hilliard*, 73 NY2d at 587 [reversing conviction and dismissing indictment where counsel was precluded by the court from visiting his client for 30 days]; *People v Chappelle*, 121 AD3d 1166, 1168 [3d Dept 2014], *lv denied* 24 NY3d 1118 [2015] [pretrial deprivation to right to counsel required vacatur of plea and dismissal of the indictment]).

Accordingly, the judgment of the Supreme Court, Bronx County (Steven L. Barrett, J., at pretrial proceedings; John W. Carter, J., at plea and sentencing), rendered September 28, 2012, convicting defendant of manslaughter in the first degree and burglary in the first degree, and sentencing him to concurrent terms of 18 years, should be reversed, on the law, the pleas vacated, and the indictment dismissed without prejudice to the People to represent any appropriate charges to another grand jury.

KAPNICK, J. (dissenting). I disagree with the majority's holding that the right to counsel claim is meritorious under the facts of this case and that dismissal of the indictment is the appropriate remedy. The People moved by notice of motion dated March 11, 2009 for an order directing the removal of a saliva sample from defendant and his codefendants for the purpose of DNA analysis. The record indicates that on March 12, 2009, when counsel appeared to set a trial date, defense counsel was given a courtesy copy of the motion and indicated that if his client was not going to agree to provide the sample, he would submit opposition papers. The record also shows that counsel for one of the codefendants did submit opposition papers arguing that the discovery request was not timely and should be denied since the People's lateness was not justified. On April 30, 2009, defense counsel made an application to be relieved due to difficulty getting paid, which was granted. On the same day, the court issued an order granting the People's motion for buccal swabs "on consent" with respect to defend-

ant.* Also on April 30, 2009, after defendant's counsel was permitted to withdraw, and the order was signed, defendant appeared before the court without counsel and was informed that the People's motion for a buccal swab had been granted. Defendant was also informed that arrangements had been made for a County Law article 18-B attorney to take over his representation and that he would meet the new attorney on May 21, 2009. Defendant indicated to the court several times that he would prefer to wait for new counsel before he went forward with the buccal swab. The court instructed defendant that the motion was already decided and there was nothing he or his attorney could do to legally challenge the order at that time. Defendant once more expressed his hesitation to agree to the swab without counsel advising him. The court explained that waiting for new counsel would delay the trial and would not be charged to the People. After being shown a copy of the order, defendant agreed, and the swab was conducted in the courtroom.

In my view, the salient fact here is that prior to the time the defendant claims he was unconstitutionally without counsel, the motion to compel the saliva sample had already been considered by the court and a decision made, granting the motion "on consent" with respect to defendant. There is no dispute that no opposition papers were submitted on behalf of defendant. While the right to counsel undoubtedly attaches during pretrial motion practice, there is no basis to hold that counsel must be present for the physical administration of the already-ordered collection of a saliva sample; nor is there a basis to view the actual collection of the sample as a "critical stage" of the proceedings (see Hurrell-Harring v State of New York, 15 NY3d 8, 20 [2010]). Although defendant argues that he was without counsel during a "pre-DNA-test hearing," the record is clear that the court had already issued its order and defendant had not been left without counsel during the pendency of the motion, which I would agree was a "critical stage."

Despite defendant's attempts to characterize it otherwise, the colloquy that ensued between the court and defendant was not a "critical stage" of the proceedings because the motion had already been decided and there was no indication that the court was reconsidering its ruling. The fact that defendant told the motion court that he "wasn't aware of the buccal swab" and

* The motion was also granted "on consent" as to one of the other co-defendants and "over objection" with respect to the codefendant who had submitted opposition papers.

had not spoken to his attorney for "two months," while troubling, raises an issue that cannot be adequately reviewed here, where the record on appeal does not contain sufficient facts to allow this Court to conduct a record-based review and defendant did not raise this non-record based claim collaterally pursuant to CPL 440.10.

While it clearly would have been more prudent and advisable for the court to have adjourned the swab until new counsel appeared, it cannot be said that the failure to do so amounted to a constitutional violation. Defendant's argument suggesting that there were defenses to the motion that prior counsel could have raised, but failed to, and that new counsel could have successfully challenged the court's order and prevented the saliva sample altogether, is based on speculation, especially since we know that counsel for one of the codefendants did oppose the motion on the same timeliness grounds now raised by defendant, and that the objection to the People's motion was unsuccessful. To the extent defendant wishes to raise an ineffective assistance of counsel claim, this cannot be done under the guise of a right to counsel violation.

Even assuming a right to counsel violation occurred here, the majority's holding that the appropriate remedy is to vacate defendant's guilty plea *and* dismiss the indictment is unsupported. Even counsel for defendant does not go so far as to ask that the indictment be dismissed. Defendant only asks that in the interest of justice this Court fashion a remedy precluding the DNA evidence. While it is unclear whether he is asking for the DNA evidence to be precluded from trial, should the case go to trial, or for the evidence to be precluded from consideration in the proceeding altogether, defendant only argues that preclusion will provide "teeth" to the finding that there was a right to counsel violation. Neither *People v Hilliard* (73 NY2d 584 [1989]), nor *People v Chappelle* (121 AD3d 1166 [3d Dept 2014], *lv denied* 24 NY3d 118 [2015]) stands for the broad proposition that any pretrial deprivation of the right to counsel requires dismissal of the indictment. Both of those cases involved right to counsel violations that occurred at or around the time of grand jury proceedings. It follows logically that any indictment secured while a defendant's right to counsel was being violated is tainted and dismissal of the indictment would be warranted. This is clearly very different from the instant scenario, where the alleged violation occurred almost one year after defendant was indicted and during proceedings related to

a discovery motion. I submit that the alleged violation does not taint or call the validity of the indictment into question, and dismissing it, even without prejudice to the People representing any appropriate charges to another grand jury, is not an appropriate remedy.

ACOSTA, J.P., and GESMER, J., concur with MANZANET-DANIELS, J.; KAPNICK, J., dissents in a separate opinion in which ANDRIAS, J., concurs.

Judgment, Supreme Court, Bronx County, rendered September 28, 2012, reversed, on the law, the pleas vacated, and the indictment dismissed without prejudice to the People to represent any appropriate charges to another grand jury.