================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 123
The People &c.,
          Appellant,
        v.
Dwight Smith,
          Respondent.




          Ramandeep Singh, for appellant.
          Matthew Bova, for respondent.








Rivera, J.:

          The People appeal an order by the Appellate Division
that reversed a judgment by Supreme Court, vacated defendant's
pleas, and dismissed the defendant's indictment without
prejudice, allowing the People to re-present any appropriate
charges to another grand jury (People v Smith, 143 AD3d 31 [1st

- 1 -

Dept 2016]).  Contrary to the People's claim, the Appellate

Division correctly determined that the trial court denied

defendant's right to counsel on the People's motion to compel

defendant to submit to a buccal swab.[1]  Nevertheless, the

Appellate Division's order should be modified, because the

indictment should not have been dismissed.

Defendants have a constitutional right to counsel at

every critical stage of the proceedings, meaning those stages

that hold "significant consequences for the accused" (Bell v

Cone, 535 US 685, 696 [2002]; see also People v Settles, 46 NY2d

154, 165 [1978]).  Here, the People filed their motion to compel

the DNA test and served the motion on retained counsel in court.

As the Appellate Division found, the trial court -- in

defendant's absence[2] -- subsequently granted both the retained

defense counsel's motion to be relieved from representing

defendant for failure to pay his fee and the People's DNA

discovery motion, which it granted based on the "putative

consent" it inferred from retained counsel's silence.  Later the

same day that counsel was relieved, defendant appeared in court.

Knowing defendant was unrepresented, the court, rather than

remain neutral, proceeded to act in place of counsel throughout

---

[1] As defendant admits, he has no right to have counsel
present during the physical administration of the buccal swab.

[2] When the court officer informed the court that defendant
had yet to be produced, retained counsel waived defendant's
production in this matter.

an extensive colloquy, telling defendant that there were no bases on which to challenge the DNA sample order.  In response to the court, defendant stated that he had not spoken with his attorney about the prosecution's motion and did not wish to consent to giving a sample.  Notwithstanding defendant's entreaties, the court rejected his repeated requests for an attorney to advise him regarding the motion.  Instead, the court told defendant "an attorney [was] not going to be able to help," and that there was "no basis for fighting [the test]."  When defendant said he did not "know the law," the judge responded "I know the law."  On these facts, the Appellate Division correctly determined that "the pretrial proceedings concerning the DNA test were 'critical' within the meaning of the law" (Smith, 143 AD3d at 35).  Accordingly, defendant was deprived his right to counsel.[3]

We reject the dissent's conclusion that defendant was not denied counsel during a critical stage of the proceeding, as that determination is contrary to law and would require that we distort the factual record.  As the People concede, there was no express consent to their request for the DNA sample, either by defendant or by retained counsel.  Nor was there any affirmative

---

[3] This is not a case in which defendant asserts an ineffective assistance of counsel claim based on matters dehors the record, which would be properly addressed in a CPL 440.10 motion (People v Jackson, 29 NY3d 18, 24 [2017]).  The colloquy between the court is on the record, and it is undisputed that defendant was unrepresented at that time.

conduct or errant statement by defendant or counsel from which implied consent could be inferred.  Instead, as the People acknowledge, the court issued its order based only on retained counsel's failure to reply to the People's motion to compel the buccal swab. Under the circumstances here, that is not a proper basis for finding defendant's consent.[4]  Further, as the record unambiguously shows, shortly after the court granted retained counsel's request to withdraw -- leaving defendant unrepresented -- defendant appeared in court, expressly denied consent, and repeatedly stated he wanted counsel to assist him in responding to the People's motion.[5]  Yet, rather than appointing counsel, the court told defendant there was no basis to oppose the motion. Notwithstanding these facts, the dissent believes defendant was represented on the motion for the DNA sample; we do not.

The dissent also mistakenly ascribes to our narrow decision some previously-unannounced, broad rule.  Here, we

---

[4] The fact that a court may generally treat counsel's failure to object as an affirmative decision not to challenge an adversary (dissenting op at 6) is irrelevant to the matter before us where the court's improper actions are independent of an order issued based on counsel's "putative" consent.  The record here establishes that the court acknowledged defendant's objections and requests for an attorney, and yet sought to persuade defendant to acquiesce to the DNA test without benefit of counsel.

[5] Contrary to the dissent's suggestion (dissenting op at 6), defendant has always maintained that he did not consent to the DNA test.  In fact, the court engaged in a substantive colloquy because of defendant's refusal to consent, not in spite of his counsel's putative consent.

solely apply settled law to the facts before us.  Where the court grants counsel's motion to be relieved from the case in defendant's absence but orders the taking of a DNA sample based on that counsel's inaction, and defendant at the first opportunity denies consent and requests assistance of counsel on that motion, the court may not deny the request and inform an unrepresented defendant that, in the court's opinion, there is no legal recourse.  Thus, we conclude defendant was denied his right to counsel in violation of the Sixth Amendment and Article 1, Section 6 of the New York State Constitution.

The legality of the remedy for that error is subject to our review pursuant to CPL 470.35 (2) (c).  Based on the nature and timing of the constitutional deprivation at issue here, the dismissal of the indictment was not an appropriate corrective action.  Under CPL 470.20, the Appellate Division may take "such corrective action as is necessary and appropriate both to rectify any injustice to the appellant resulting from the error or defect which is the subject of the reversal or modification and to protect the rights of the respondent."  The violation of defendant's right to counsel, although serious, occurred post-indictment and did not retroactively infect the grand jury proceedings.  Nevertheless, the violation resulted in defendant being denied the opportunity to confer with counsel regarding a potential challenge to the taking of inculpatory DNA evidence. This warranted the Appellate Division vacating defendant's pleas.

Dismissal of the indictment, however, was not "necessary and appropriate" to rectify the injustice to the defendant.

Accordingly, the order of the Appellate Division should be modified by reinstating the indictment and remitting the case to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

People v Dwight Smith

No. 123

GARCIA, J.(dissenting):

I agree that the better course in this case would have been for the trial court to adjourn the proceedings until new counsel was appointed.  But I disagree with the majority's conclusion that the court's failure to do so amounted to an error of constitutional dimension.  Because defendant was never unrepresented during a critical stage of the proceedings, defendant's constitutional right-to-counsel argument -- his only reviewable claim[1] -- must be rejected.  Accordingly, I dissent.

I.

Defendant was indicted on a number of charges, including second-degree murder, in connection with a burglary during which one of the victims was shot and killed.  The three surviving victims independently identified defendant from a photo array and stated that defendant was the "ring leader" during the crime.  Defendant was arrested and retained his own counsel.

The Office of the Chief Medical Examiner of New York City retrieved low copy human DNA from evidence recovered from the crime scene, and the People later brought a motion to compel,

_____

[1] Defendant's remaining claims, including his asserted statutory and due process violations, are beyond our review (see CPL 470.35 [2] [b]).

- 1 -

seeking saliva samples from defendant and two co-defendants.  The next day, in court, with defendant present, the People served a copy of the motion on the defense.  Defense counsel indicated that he would "discuss it with [his] client."  The court then asked:  "If your client is not inclined to agree, would you put in your answer?"  Defense counsel responded:  "Yes, I will."  Defense counsel did not file papers or otherwise oppose the motion.

During a later appearance, before defendant had been produced, defense counsel "ma[d]e an application to be excused from th[e] case."  After a brief dialogue, including an off-the-record discussion, the court relieved defense counsel.  At the close of the proceeding, the prosecutor stated:  "We're going to ask the card be held so we can go get a swab."

Later that day, defendant appeared before the trial court without an attorney.  The court informed defendant that his attorney had appeared "earlier today," stating:  "When I called the case at that time, I signed an order for a buccal swab.  It's for a swab of your cheek with a swab, Q-tip, for purposes of providing [a] DNA sample.  I have signed that order."  The court then asked defendant if he would "mind doing [the swab] without your lawyer here in light of the fact that there has been an order signed by this Court indicating that you have to do that?"  Defendant responded that he would "probably wait for [his] attorney."  A lengthy colloquy ensued, during which the court

implored defendant to comply with the order.  Defendant stated
several times that he "want[ed] to wait for [his] attorney,"
indicating that he "wasn't aware of [the] buccal swab," that he
"didn't have contact [for] two months," and that he would
"probably want to . . . oppose" the People's motion to compel.
The court stated that "[t]he motions are finished" and that
defendant had "no basis" for opposing the signed order; the court
was just "ask[ing]" defendant "to cooperate" and to do what the
court had already "ordered [him] to do" in order to avoid harming
defendant's already "injured arm."  Ultimately, the court
presented defendant with a copy of the signed order and he agreed
to the swab.

        Defendant's new counsel later appeared on defendant's
behalf and informed the court that his predecessor had provided
him with the case file.  New counsel subsequently filed an
omnibus motion but did not address the motion to compel DNA
evidence.  Defendant eventually pleaded guilty to first-degree
manslaughter and first-degree burglary.

        The Appellate Division, with two Justices dissenting,
reversed defendant's convictions, vacated his guilty plea, and
dismissed the indictment (People v Smith, 143 AD3d 31 [1st Dept
2016]).  The court determined that defendant's right to counsel
had been violated, reasoning that "[t]he pretrial proceedings
concerning the DNA test were 'critical'" (id. at 35) and that
"[p]roceeding without counsel under the circumstances violated

defendant's Sixth Amendment rights" (id. at 33).  The court further held that "[t]he deprivation of [defendant's] Sixth Amendment right is of constitutional dimension and is not subject to harmless error analysis," and that the "appropriate remedy under the circumstances is to vacate both pleas, and to dismiss the indictment" (id. at 36).

The two dissenting Justices disagreed, emphasizing the "salient fact" that, "prior to the time the defendant claims he was unconstitutionally without counsel, the motion to compel the saliva sample had already been considered by the court and a decision made" (id. at 37 [Kapnick, J., dissenting]).  The dissent noted that "the colloquy that ensued between the court and defendant was not a 'critical stage' of the proceedings because the motion had already been decided and there was no indication that the court was reconsidering its ruling" (id. [Kapnick, J., dissenting]).  The dissent further disagreed with the court's decision to dismiss the indictment because "the alleged violation" -- which "occurred almost one year after defendant was indicted and during proceedings related to a discovery motion" -- did not "taint or call the validity of the indictment into question" (id. at 38-39 [Kapnick, J., dissenting]).

A Justice of the Appellate Division granted defendant's application for leave to appeal (28 NY3d 976 [2016]).

II.

The right to counsel attaches at arraignment and "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings" (<u>Montejo v Louisiana</u>, 556 US 778, 786 [2009] [citations omitted]).  A "critical stage" includes "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial" (<u>United States v Wade</u>, 388 US 218, 226 [1967]).  A "mere preparatory step," such as "systematized or scientific analyzing" of "fingerprints, blood sample[s], clothing, and the like," does not constitute a "critical stage[] at which the accused has the right to the presence of his counsel" since there is "minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial" (<u>id.</u> at 227-228).

A.

The parties do not dispute that the motion practice surrounding the buccal swab amounted to a critical stage of the proceeding, entitling defendant to the assistance of counsel. However, as the record confirms, all motion practice was complete while defendant was represented by his retained counsel.  During that time, defendant's retained attorney informed the court that he would oppose the People's motion if defendant was "not inclined to agree" to the swab, and the court relied on that representation -- and the defense's failure to oppose the motion

-- in signing the order to compel. Defendant's retained attorney was also aware of the decision on the motion; during defense counsel's final appearance, the prosecutor stated in court that he intended to "go get a swab" that same day. The court later confirmed, on the record, that defendant's retained attorney had "understood and accepted" that the court had "signed an order for a buccal swab"; "in fact, he consented" to it.

The majority concludes that there was no "proper basis for finding consent" because there was no "express" statement or other "affirmative conduct" that adequately conveyed the defense's consent (majority op at 3-4). As an initial matter, defendant does not raise this argument on appeal, nor did he appeal from Supreme Court's decision on the motion to compel. Rather, defendant concedes that his retained counsel consented to the motion, arguing that, "[h]ad the court appointed new counsel, he or she could have *withdrawn consent*" (emphasis added).

In any event, the majority's claim of inadequate consent is undermined by the record. Defense counsel expressly stated, on the record, that he would oppose the motion if the defense did not consent; his subsequent failure to submit opposition papers, by itself, constitutes an adequate basis for the court to grant the People's motion (see People v Cole, 73 NY2d 957, 958 [1989] [noting that the defendant's motion was "conceded by the People when they failed to submit opposition papers"]). The court ultimately confirmed, on the record, that

defense counsel had "consented" to the motion.  On this record, defendant could not plausibly contend (and unsurprisingly, does not contend) that the People's motion was not properly granted on consent.

Of course, a defendant may not retroactively unravel a signed order by simply revoking consent after the motion has already been decided.  And to the extent defendant argues that he never consented to begin with -- that he "wasn't aware" of the People's motion, that he "didn't have contact [for] two months," and that his counsel failed to effectively oppose the motion -- those arguments amount to a classic claim of ineffective assistance of counsel.  Defendant cannot now raise that claim, based on matters outside the record, under the guise of a constitutional right-to-counsel violation.

By crediting defendant's self-serving claim that he never consented to the swab -- and that "he had not spoken with his attorney about the prosecution's motion" -- the majority effectively presumes defense counsel's ineffectiveness based solely on defendant's unsubstantiated allegations regarding matters beyond the record (majority op at 2-4).  But defendant's bare assertions of inadequate representation on the motion -- a pure claim of ineffectiveness -- are "of the type where 'it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought

under CPL 440.10'" (<u>People v Henderson</u>, 28 NY3d 63, 66 [2016],
quoting <u>People v Brown</u>, 45 NY2d 852, 854 [1978]). Indeed, on this
record, we are unable to discern whether or not defendant in fact
consented to the motion -- and communicated that consent to
counsel -- only to later regret his decision.  If anything,
defendant's claim that he was "wasn't aware" of the motion is
undermined by the record, as the People served the motion on
defense counsel in defendant's presence.  And while "*[t]he
colloquy* between the court [and defendant] is on the record"
(majority op at 3 [emphasis added]), defendant's allegations
during that colloquy concern out-of-court matters relating to his
attorney's performance.  Because those arguments of
ineffectiveness are "based on matters outside the record," they
must be raised by CPL 440.10 motion and, as such, are "beyond
review on this appeal" (<u>Henderson</u>, 28 NY3d at 66).

    In essence, the majority's ruling allows a defendant to
assert, on a direct appeal in a criminal case, unsubstantiated
allegations of counsel's deficient performance that -- when
styled as a "right to counsel" violation -- will be fully
credited without further inquiry.  In doing so, the majority
permits a defendant to end-run the longstanding requirement that,
"unless it is clear from the record" that reversible error
occurred, claims of ineffective assistance must be brought under
CPL 440.10 (<u>People v Evans</u>, 16 NY3d 571, 575 [2011]; <u>see</u> <u>also</u>
<u>People v Campbell</u>, 30 NY3d 941, 941 [2017]; <u>Henderson</u>, 28 NY3d at

66; <u>People v Maracle</u>, 19 NY3d 925, 929 [2012]; <u>People v Haffiz</u>, 19 NY3d 883, 885 [2012]; <u>People v Ramos</u>, 63 NY2d 640, 643 [1984]; <u>Brown</u>, 45 NY2d at 853-854).

B.

With regard to the later proceeding, during which defendant was unrepresented, defendant argues -- and the majority appears to agree[2] -- that this proceeding also amounted to a critical stage and therefore defendant's right to counsel was violated.  Although the better course would have been for the trial court to adjourn the proceedings until new counsel was appointed, the court's failure to do so did not amount to a violation of defendant's constitutional right to counsel because the "proceeding" was not a critical stage within the meaning of the Sixth Amendment.

As the trial court made clear, at the time defendant's

---

[2] The majority does not purport to endorse the Appellate Division's conclusion that defense counsel's allegedly deficient performance on the motion, by itself, constituted a right to counsel violation because defendant's claims are properly understood to allege "nonrepresentation rather than ineffective representation" (135 AD3d at 35, citing <u>Hurrell-Harring v State of NY</u>, 15 NY3d 8, 22 [2010]).  <u>Hurrell-Harring</u> involved a civil class action claim and reviewed the disposition of a motion to dismiss -- a stage of the litigation where "[t]he allegations of the complaint must . . . be deemed true and construed in plaintiffs' favor, affording them the benefit of every reasonable inference" (<u>Hurrell-Harring</u>, 15 NY3d at 20).  In this case, the Appellate Division's willingness to accept defendant's "non representation" claim, based solely on his self-serving remarks, would represent a dramatic expansion of the constitutional right to counsel: it would permit a defendant's allegations of ineffectiveness -- pertaining to matters outside the record -- to establish an automatic error of constitutional dimension.

counsel was relieved, the People's motion had already been

decided:

> "THE COURT: . . . When I called the case at
> that time ["earlier today"], I signed an
> order for a buccal swab . . . I have signed
> that order.
> "Now, [defendant's attorney] understood and
> accepted that; in fact, he consented."

Once that order was signed, defendant's "consent" was no longer

required; the court was simply asking defendant to comply with

the already-signed order:

> "THE COURT: . . . [Y]ou mind doing that . . .
> in light of the fact that there has been an
> order signed by this Court indicating that
> you have to do that?
>
> . . .
>
> "THE COURT:  . . . The motions are finished.
> All I want to ask you is to cooperate. . . .
> "I'm going to ask you to do what I ordered
> you to do
>
> . . .
>
> "THE COURT:  . . . Only reason I'm asking as
> opposed to telling is because I don't see any
> reason to get in a wrestling match
> downstairs, especially with the arm like you
> with an injured arm. . . .
> "I'm going to tell the officer that they have
> to do it and force you to do it; but it's
> going to be done . . . because I issued an
> order."

Patently, the court's colloquy with defendant had no significance

with regard to the underlying motion.  By definition, a

proceeding cannot be "critical" within the meaning of the Sixth

Amendment where, as here, it "was not only noncritical, but, as a

matter of law, unnecessary" (see People v Contreras, 12 NY3d 268,

273 [2009]).

Nor was defendant entitled to have counsel present during the administration of the buccal swab -- a purely ministerial task (see People v Wade, 338 US 218, 227-228 [1967]; majority op at 2). Indeed, it was by sheer happenstance that the swab was not taken in lockup where, presumably, counsel would not have been present and there would have been no record of defendant's effort to relitigate the already-decided motion.

                              III.

Defendant was represented by counsel for the duration of the motion practice on the DNA swab, and his claim of inadequate representation on that motion is beyond the scope of our review. The subsequent proceeding had no bearing on the already-decided motion and therefore cannot amount to a critical stage. I disagree with the majority's conclusion that defendant's unsupported claims of dissatisfaction with counsel somehow change that. I would reverse.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order modified by reinstating the indictment and remitting the case to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed. Opinion by Judge Rivera. Chief Judge DiFiore and Judges Wilson and Feinman concur. Judge Garcia dissents in an opinion, in which Judges Stein and Fahey concur.

Decided December 19, 2017