GARCIA, J. (dissenting):
I agree that the better course in this case would have been for the trial court to adjourn the proceedings until new counsel was appointed. But I disagree with the **569 *792 majority's conclusion that the court's failure to do so amounted to an error of constitutional dimension. Because defendant was never unrepresented during a critical stage of the proceedings, defendant's constitutional right-to-counsel argument-his only reviewable claim[1] -must be rejected. Accordingly, I dissent.
I.
Defendant was indicted on a number of charges, including second-degree murder, in connection with a burglary during which one of the victims was shot and killed. The three surviving victims independently identified defendant from a photo array and stated that defendant was the "ring leader" during the crime. Defendant was arrested and retained his own counsel.
The Office of the Chief Medical Examiner of New York City retrieved low copy human DNA from evidence recovered from the crime scene, and the People later brought a motion to compel, seeking saliva samples from defendant and two co-defendants.
***632 The next day, in court, with defendant present, the People served a copy of the motion on the defense. Defense counsel indicated that he would "discuss it with [his] client." The court then asked: "If your client is not inclined to agree, would you put in your answer?" Defense counsel responded: "Yes, I will." Defense counsel did not file papers or otherwise oppose the motion.
During a later appearance, before defendant had been produced, defense counsel "ma[d]e an application to be excused from th[e] case." After a brief dialogue, including an off-the-record discussion, the court relieved defense counsel. At the close of the proceeding, the prosecutor stated: "We're going to ask the card be held so we can go get a swab."
Later that day, defendant appeared before the trial court without an attorney. The court informed defendant that his attorney had appeared "earlier today," stating: "When I called the case at that time, I signed an order for a buccal swab. It's for a swab of your cheek with a swab, Q-tip, for purposes of providing [a] DNA sample. I have signed that order." The court then asked defendant if he would "mind doing [the swab] without your lawyer [here] in light of the fact that there has been an order signed by this Court indicating that you have to do that?" Defendant responded that he would "probably wait for [his] attorney." A lengthy colloquy ensued, during which the court implored defendant to comply with the order. Defendant stated several times that he "want[ed] to wait for [his] attorney," indicating that he "wasn't aware of [the] buccal swab," that he "didn't have contact [for] two months," and that he would "probably want to ... oppose" the People's motion to compel. The court stated that "[t]he motions are finished" and that defendant had "no basis" for opposing the signed order; the court was just "ask[ing]" defendant "to cooperate" and to do what the court had already "ordered [him] to do" in order to avoid harming defendant's already "injured arm." Ultimately, the court presented defendant with a copy of the signed order and he agreed to the swab.
Defendant's new counsel later appeared on defendant's behalf and informed the court that his predecessor had provided him with the case file. New counsel subsequently filed an omnibus motion but did not address the motion to compel DNA evidence. Defendant eventually pleaded **570 *793 guilty to first-degree manslaughter and first-degree burglary. ***633 The Appellate Division, with two Justices dissenting, reversed defendant's convictions, vacated his guilty plea, and dismissed the indictment ( People v. Smith, 143 A.D.3d 31, 37 N.Y.S.3d 4 [1st Dept. 2016] ). The Court determined that defendant's right to counsel had been violated, reasoning that "[t]he pretrial proceedings concerning the DNA test were 'critical' " ( id. at 35, 37 N.Y.S.3d 4 ) and that "[p]roceeding without counsel under the circumstances violated defendant's Sixth Amendment rights" ( id. at 33, 37 N.Y.S.3d 4 ). The Court further held that "[t]he deprivation of [defendant's] Sixth Amendment rights is of constitutional dimension and is not subject to a harmless error analysis," and that the "appropriate remedy under the circumstances is to vacate both pleas, and to dismiss the indictment" ( id. at 36, 37 N.Y.S.3d 4 ).
The two dissenting Justices disagreed, emphasizing the "salient fact" that, "prior to the time the defendant claims he was unconstitutionally without counsel, the motion to compel the saliva sample had already been considered by the court and a decision made" ( id. at 37, 37 N.Y.S.3d 4 ). The dissent noted that "the colloquy that ensued between the court and defendant was not a 'critical stage' of the proceedings because the motion had already been decided and there was no indication that the court was reconsidering its ruling" ( id. ). The dissent further disagreed with the court's decision to dismiss the indictment because "the alleged violation"-which "occurred almost one year after defendant was indicted and during proceedings related to a discovery motion"-did not "taint or call the validity of the indictment into question" ( id. at 38-39, 37 N.Y.S.3d 4 ).
A Justice of the Appellate Division granted defendant's application for leave to appeal ( 28 N.Y.3d 976, 43 N.Y.S.3d 263, 66 N.E.3d 9 [2016] ).
II.
The right to counsel attaches at arraignment and "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings" ( Montejo v. Louisiana, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 [2009] [citations omitted] ). A "critical stage" includes "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial" ( United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 [1967] ). A "mere preparatory step," such as "systematized or scientific analyzing" of "fingerprints, blood sample[s], clothing, hair, and the like," does not constitute a "critical stage[ ] at which the accused has the right to the presence of ***634 his counsel" since there is "minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial" ( id. at 227-228, 87 S.Ct. 1926 ).
A.
The parties do not dispute that the motion practice surrounding the buccal swab amounted to a critical stage of the proceeding, entitling defendant to the assistance of counsel. However, as the record confirms, all motion practice was complete while defendant was represented by his retained counsel. During that time, defendant's retained attorney informed the court that he would oppose the People's motion if defendant was "not inclined to agree" to the swab, and the court relied on that representation-and the defense's failure to oppose the motion-in signing the order to compel. Defendant's retained attorney was also aware of the decision on the motion; during defense counsel's final **571 *794 appearance, the prosecutor stated in court that he intended to "go get a swab" that same day. The court later confirmed, on the record, that defendant's retained attorney had "understood and accepted" that the court had "signed an order for a buccal swab"; "in fact, he consented" to it.
The majority concludes that there was no "proper basis for finding consent" because there was no "express" statement or other "affirmative conduct" that adequately conveyed the defense's consent (majority op. at 630, 69 N.Y.S.3d at 567-68, 92 N.E.3d at 790-91). As an initial matter, defendant does not raise this argument on appeal, nor did he appeal from Supreme Court's decision on the motion to compel. Rather, defendant concedes that his retained counsel consented to the motion, arguing that, "[h]ad the court appointed new counsel, he or she could have withdrawn consent " (emphasis added).
In any event, the majority's claim of inadequate consent is undermined by the record. Defense counsel expressly stated, on the record, that he would oppose the motion if the defense did not consent; his subsequent failure to submit opposition papers, by itself, constitutes an adequate basis for the court to grant the People's motion (see People v. Cole, 73 N.Y.2d 957, 958, 540 N.Y.S.2d 984, 538 N.E.2d 336 [1989] [noting that the defendant's motion was "conceded by the People when they failed to submit opposition papers"] ). The court ultimately confirmed, on the record, that defense counsel had "consented" to the motion. On this record, defendant could not plausibly contend (and unsurprisingly, does not contend) that the People's motion was not properly granted on consent.
***635 Of course, a defendant may not retroactively unravel a signed order by simply revoking consent after the motion has already been decided. And to the extent defendant argues that he never consented to begin with-that he "wasn't aware" of the People's motion, that he "didn't have contact [for] two months," and that his counsel failed to effectively oppose the motion-those arguments amount to a classic claim of ineffective assistance of counsel. Defendant cannot now raise that claim, based on matters outside the record, under the guise of a constitutional right-to-counsel violation.
By crediting defendant's self-serving claim that he never consented to the swab-and that "he had not spoken with his attorney about the prosecution's motion"-the majority effectively presumes defense counsel's ineffectiveness based solely on defendant's unsubstantiated allegations regarding matters beyond the record (majority op at 629-630, 69 N.Y.S.3d at 567-68, 92 N.E.3d at 790-91). But defendant's bare assertions of inadequate representation on the motion-a pure claim of ineffectiveness-are "of the type where 'it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10 ' " ( People v. Henderson, 28 N.Y.3d 63, 66, 41 N.Y.S.3d 464, 64 N.E.3d 284 [2016], quoting People v. Brown, 45 N.Y.2d 852, 854, 410 N.Y.S.2d 287, 382 N.E.2d 1149 [1978] ). Indeed, on this record, we are unable to discern whether or not defendant in fact consented to the motion-and communicated that consent to counsel-only to later regret his decision. If anything, defendant's claim that he was "wasn't aware" of the motion is undermined by the record, as the People served the motion on defense counsel in defendant's presence. And while "[t]he colloquy between the court [and defendant] is on the record" (majority op at 629 **572 *795 n. 3, 69 N.Y.S.3d at 567 n. 3, 92 N.E.3d at 790 n. 3 [emphasis added] ), defendant's allegations during that colloquy concern out-of-court matters relating to his attorney's performance. Because those arguments of ineffectiveness are "based on matters outside the record," they must be raised by a CPL 440.10 motion and, as such, are "beyond review on this appeal" ( Henderson, 28 N.Y.3d at 66, 41 N.Y.S.3d 464, 64 N.E.3d 284 ).
In essence, the majority's ruling allows a defendant to assert, on a direct appeal in a criminal case, unsubstantiated allegations of counsel's deficient performance that-when styled as a "right to counsel" violation-will be fully credited without further inquiry. In doing so, the majority permits a defendant to end-run the long-standing requirement that, "unless it is clear from the record" that reversible error occurred, claims of ***636 ineffective assistance must be brought under CPL 440.10 ( People v. Evans, 16 N.Y.3d 571, 575, 925 N.Y.S.2d 366, 949 N.E.2d 457 [2011] ; see also People v. Campbell, 30 N.Y.3d 941, 942-943, 67 N.Y.S.3d 125, 89 N.E.3d 515 [2017] ; Henderson, 28 N.Y.3d at 66, 41 N.Y.S.3d 464, 64 N.E.3d 284 ; People v. Maracle, 19 N.Y.3d 925, 929, 950 N.Y.S.2d 498, 973 N.E.2d 1272 [2012] ; People v. Haffiz, 19 N.Y.3d 883, 885, 951 N.Y.S.2d 690, 976 N.E.2d 216 [2012] ; People v. Ramos, 63 N.Y.2d 640, 643, 479 N.Y.S.2d 510, 468 N.E.2d 692 [1984] ; Brown, 45 N.Y.2d at 853-854, 410 N.Y.S.2d 287, 382 N.E.2d 1149 ).
B.
With regard to the later proceeding, during which defendant was unrepresented, defendant argues-and the majority appears to agree[2] -that this proceeding also amounted to a critical stage and therefore defendant's right to counsel was violated. Although the better course would have been for the trial court to adjourn the proceedings until new counsel was appointed, the court's failure to do so did not amount to a violation of defendant's constitutional right to counsel because the "proceeding" was not a critical stage within the meaning of the Sixth Amendment.
As the trial court made clear, at the time defendant's counsel was relieved, the People's motion had already been decided:
"THE COURT: ... When I called the case at that time ["earlier today"], I signed an order for a buccal swab ... I have signed that order.
"Now, [defendant's attorney] understood and accepted that; in fact, he consented."
Once that order was signed, defendant's "consent" was no longer required; the court was simply asking defendant to comply with the already-signed order:
**573 *796 "THE COURT: ... [Y]ou mind doing that ... in ***637 light of the fact that there has been an order signed by this Court indicating that you have to do that?
...
"THE COURT: ... The motions are finished. All I want to ask you is to cooperate....
"I'm going to ask you to do what I ordered you to do
...
"THE COURT: ... Only reason I'm asking as opposed to telling is because I don't see any reason to get in a wrestling match downstairs, especially with the arm like you with an injured arm....
"I'm going to tell the officer that they have to do it and force you to do it; but it's going to be done ... because I issued the order."
Patently, the court's colloquy with defendant had no significance with regard to the underlying motion. By definition, a proceeding cannot be "critical" within the meaning of the Sixth Amendment where, as here, it "was not only noncritical, but, as a matter of law, unnecessary" (see People v. Contreras, 12 N.Y.3d 268, 273, 879 N.Y.S.2d 369, 907 N.E.2d 282 [2009] ).
Nor was defendant entitled to have counsel present during the administration of the buccal swab-a purely ministerial task (see United States v. Wade, 388 U.S. 218, 227-228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 [1967] ; majority op at 629 n. 1, 69 N.Y.S.3d at 567 n. 1, 92 N.E.3d at 790 n. 1). Indeed, it was by sheer happenstance that the swab was not taken in lockup where, presumably, counsel would not have been present and there would have been no record of defendant's effort to relitigate the already-decided motion.
III.
Defendant was represented by counsel for the duration of the motion practice on the DNA swab, and his claim of inadequate representation on that motion is beyond the scope of our review. The subsequent proceeding had no bearing on the already-decided motion and therefore cannot amount to a critical stage. I disagree with the majority's conclusion that defendant's unsupported claims of dissatisfaction with counsel somehow change that. I would reverse.
***638 Order modified by reinstating the indictment and remitting the case to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
Chief Judge DiFiore and Judges Wilson and Feinman concur. Judge Garcia dissents in an opinion, in which Judges Stein and Fahey concur.

Defendant's remaining claims, including his asserted statutory and due process violations, are beyond our review (see CPL 470.35[2] [b] ).

The majority does not purport to endorse the Appellate Division's conclusion that defense counsel's allegedly deficient performance on the motion, by itself, constituted a right to counsel violation because defendant's claims are properly understood to allege "nonrepresentation rather than ineffective representation" (135 A.D.3d at 35, citing Hurrell-Harring v. State of NY, 15 N.Y.3d 8, 22, 904 N.Y.S.2d 296, 930 N.E.2d 217 [2010] ). Hurrell-Harring involved a civil class action claim and reviewed the disposition of a motion to dismiss-a stage of the litigation where "[t]he allegations of the complaint must ... be deemed true and construed in plaintiffs' favor, affording them the benefit of every reasonable inference" (Hurrell-Harring, 15 N.Y.3d at 20, 904 N.Y.S.2d 296, 930 N.E.2d 217 ). In this case, the Appellate Division's willingness to accept defendant's "non representation" claim, based solely on his self-serving remarks, would represent a dramatic expansion of the constitutional right to counsel: it would permit a defendant's allegations of ineffectiveness-pertaining to matters outside the record-to establish an automatic error of constitutional dimension.